(Nos. 18985, 18986.—)

THE CITY OF CHICAGO, Appellee, *vs.* JOSEPH W. JACKSON *et al.*—(PATRICK J. WOODS *et al.* Appellants.)

*Opinion filed December 20, 1928—Rehearing denied Feb. 6, 1929.*

W. T. Hapeman, and Latchford & McKenna, for appellants.

Samuel A. Ettelson, Corporation Counsel, and Gotthard A. Dahlberg, (Francis J. Cuneo, and Joseph J. Thompson, of counsel,) for appellee.

Mr. Justice Dunn delivered the opinion of the court:

The city of Chicago filed a petition in the superior court of Cook county to ascertain the compensation to be paid to the owners of certain land described in the petition which the city desired to take for the purpose of opening an alley in the block bounded on the north by East Sixtieth street, on the south by East Sixty-first street, on the east by Kimbark avenue and on the west by Woodlawn avenue. The alley extended north from Sixty-first street a distance of 50 feet with a width of 10 feet, then for 150 feet with a width of 18 feet, then east 15 feet and north 460 feet, and then east to Kimbark avenue. Patrick J. Woods owned lot 3 in block 1, which abutted on the west side of the alley, the south line of the lot being 50 feet north of Sixty-first street and its north line being the south line of lot 4, which was owned by Harry Potovsky. These lots were 138 feet deep, fronted west on Woodlawn avenue and each was 50 feet wide. In this proceeding the city sought to condemn the east 18 feet of lots 3 and 4. The commissioners filed their assessment roll on December 12, 1925, fixing the value of the property taken from each of the lots at $675, and finding that the remainder of each lot would be benefited $500. A jury was waived. The court heard the cause and found the just compensation to be paid to the owner of each lot was $900, and that the lots had not been assessed more than they would be benefited or more than their proportionate share of the cost of the improvement. The owners appealed, and the appeals were heard and submitted together.

The only question to be considered on these appeals is the amount of the compensation to which the appellants are entitled. The improvements on the two lots were the same. Upon each was a three-story, six-flat building 90 feet deep, with the back porches and stairways extending to 27 feet from the east lot line. The buildings were constructed in the period between 1893 and 1900 and had been remodeled for use and are used as rooming houses, for which they are especially adapted because of their proximity to the University of Chicago. Each building produced a rental of from $850 to $900 a month. The east 10 feet of each lot was used as a private alley. The appellant Woods bought lot 3 in November, 1922, for $27,000. Potovsky bought lot 4 two years before he testified, in February, 1928, for $38,000. He testified that he spent $10,000 in improvements on the property after he bought it.

Two expert witnesses testified for each party. The two testifying for the appellants valued each of the lots at $350 a front foot, or $2.70 a square foot, and estimated the value of the 900 square feet taken from each lot at $2430, being $2.70 a square foot. Their opinions were based on their knowledge of the property and familiarity with the values of property in the neighborhood. Their testimony was that the lots were improved in conformity to the character of the neighborhood, with very high-class apartment buildings, comparatively modern improvements, built between 1893 and 1900 and maintained.

One of the expert witnesses for the appellee also testified that in his opinion if the lots were vacant their value would be $350 a front foot, but that he could not arrive at that value with the present improvement because the value is limited by the earning power of the present improvement. His estimate of the value of the 18 feet taken off the east end of each lot was $675, and he arrived at that value by deducting from the value of the entire property, which in his opinion was $30,000, the value of the improvement,

which he estimated at $25,000, and taking the remainder, $5000, as the value of the lot, being $100 a front foot, or 75 cents a square foot, a total value for the 900 square feet taken of $675. On cross-examination he testified that the fair cash rental value of a building like those on these lots would be about $6000 a year if rented in apartments. If rented for rooming houses, as they are, they would not bring in the rent. In answer to the question, "Assuming that the rental return on the Woods property was $900, and that the roomers furnished their own linens, and all that the owner or operator of the building had to furnish was heat and light, what, in your opinion, would be the value of the land and building on a rental value basis?" he said that would not change his opinion of the rental value of the property, because in a rooming house there are a number of elements to be considered, and they are not real estate elements. For instance, the occupancy is limited, the vacancies quite numerous (a large per cent of the district being student rooming houses) for about three months in the year, the buildings are generally pretty well occupied for the school term only nine months out of twelve. The maintenance of the grounds, electric light bills and wear and tear on the property is greater. The other of appellee's experts fixed the value of the lots at $300 a front foot, or $2.30 a square foot, without any building on it, as vacant, unimproved property. He testified that in his opinion the value of lot 3 was $32,740 basing his opinion on sales of similar property on the street, as to rental value based on thirty-eight years of experience, together with his experience in renting and cost of operation. He arrived at the net figure of the value of the property based on the return governing property of this description, together with the rentability because of its proximity to the university. He estimated the improvements at $27,000, and deducting that from the total value of $32,740, he found the value of the land to be $5740, or 88⅓ cents a square foot, and the

value of the 900 feet taken to be $795. He took the value of the land as a basis "and the value of the rooming flat in this district as it will be used, for rooming purposes, at $90 a month, or $6480, considering the cost of operation, expenses, taxes, coal, janitor, lights, water, resulting losses in rent collected, $3206, leaving a net of $3274." "In order to make my calculations," he says, "ten per cent would be $3274." On cross-examination he stated that in his opinion the value of the lot if vacant, without the building, subject to use as unimproved property, would be $300 a front foot, that the value of the east 18 feet without any building on it would be $2.30 a square foot, which would amount to $2070.

Cash market value is the measure of compensation to the owner for land taken for public use by the exercise of the power of eminent domain. (*City of Chicago* v. *Farwell,* 286 Ill. 415.) In ascertaining the compensation the owner is entitled to the value of his property for the most profitable use for which it is available. This availability, however, does not refer to a mere future possibility but to a present capacity for a use which may be anticipated with reasonable certainty and made the basis of an intelligent estimate of value. (*City of Chicago* v. *Lord,* 276 Ill. 571.) The compensation to be ascertained for property taken is the cash market value of the property at the time it is taken, in the condition in which it is. There is no question in this case that the market value of the property of each of the appellants was about $30,000. All agree that the value of the bare lot is from $15,000 to $17,500. The value placed upon the house by the witnesses for the appellee is $25,000 or $27,000. The conclusion of these witnesses that the placing of a $25,000 improvement on the lots has reduced the value of the lots more than two-thirds cannot fairly be reached. The fact, if it is a fact, that the lot with the improvement on it is not worth the amount of the value of the lot and the cost of the improvement does not tend to

show that the value of the lot has been diminished, though it may show that bad judgment was exercised in the cost or character of the improvement made. All say that the lot without the improvement is worth $300 or $350 a foot. Two of the witnesses say that the lot with the improvement is only worth $100 a foot. There has been no change in the lot except the construction of the improvement. It is impossible, therefore, that it could have lost two-thirds of its value, or more, unless it should appear, if the owner desired to remove the improvement, leaving the vacant lot, it would cost him more than the difference between the value of the lot and the value of the entire property as improved. There is no such evidence in the record. On the contrary the evidence is that the owner derives from each lot rent of $850 to $900 a month. The appellee's witnesses did not regard this fact as a material consideration in the determination of value, and the one bases his conclusion on his own estimate of rental value of $6000 a year and the other his estimate of $6480 a year. In *City of Chicago* v. *Witt,* 289 Ill. 520, it was said that the rental value of the property was certainly an important question to be considered by the jury in reaching the fair cash market value of the property, even though the improvements were old frame buildings and apparently rapidly depreciating in value. Every witness gave as his estimate of the value of the property taken, the value of the 900 square feet as a proportional part of the 6900 square feet in each lot at the rate of the value per square foot of the entire lot. It has not been suggested that this was not a proper basis and no other basis appears in the evidence. The finding of the court of one dollar a square foot, or $900 for each lot, is contrary to the evidence.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*