(Nos. 2373, 2374, 2375, 2377, 2378, 2379, Consolidated—

SAMUEL STEIN AND SADIE STEIN, Nos. 2373, 2374, NILES BURKE ET AL., No. 2375, FREDERICK A. RUB, No. 2377, ALBERT ST. JULIEN ET AL., No. 2378, HELEN ST. JULIEN, No. 2379, Claimants, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed November 30, 1934.*

BARR & BARR, for claimants.

OTTO KERNER, Attorney General; JOHN KASSERMAN, Assistant Attorney General, for respondent.

*Per Curiam:*

All of the above claims arise by reason of the construction of the Illinois Waterway through the City of Joliet. The several claimants own property which they claim has been damaged either by the construction of the Cass Street Bridge or the Jefferson Street Bridge over the Illinois Waterway in said City of Joliet, and seek to be recompensed for the damages which they claim to have sustained by reason of the construction of such bridges.

Inasmuch as the same questions are involved in each of the several cases, and inasmuch as the same counsel represent all of the claimants, the several claims have been consolidated for the purpose of this hearing.

The several claimants filed their respective claims with the Department of Public Works and Buildings, in accordance with the provisions of the Statute of this State commonly known as the Illinois Waterway Act. The claimants and the said Department were not able to reach an agreement as to the amount of damages sustained, if any, nor were they able to agree on arbitration in accordance with the provisions of the Waterway Act. In consequence thereof, and by stipulation between the several claimants and the Department of Public Works and Buildings, the several claims were submitted to this court for determination.

It is stipulated and agreed that the several awards made by this court, if any, shall be paid by the Department of Public Works and Buildings, and not by way of appropriation made by the Legislature, as in cases where awards are made by this court under the Court of Claims Act.

The facts, so far as they apply to each of the several cases, are substantially as follows:

Sometime prior to the year 1932, the respondent commenced the construction of the Illinois Waterway through the City of Joliet, and was engaged in such construction work during all of the year 1932, and for sometime thereafter. Said Waterway, in passing through the City of Joliet, runs in a northerly and southerly direction, and in general follows the bed of the DesPlaines River and the Illinois and Michigan Canal, and occupies the space theretofore occupied by said river and said canal. Both Jefferson Street and Cass Street (which is known as Western Avenue west of the river) in said City of Joliet extend in an easterly and westerly direction and intersect the Illinois Waterway at right angles. Prior to the time of the construction of the Illinois Waterway, said DesPlaines River and said Illinois and Michigan Canal were crossed by public bridges approximately level, and at grade on both Jefferson and Cass Streets.

Respondent commenced the work of demolishing the then existing bridge across said river and canal on Jefferson Street about the 25th day of April, A. D. 1932, and commenced the work of demolishing the then existing bridge on Cass Street about May 1, 1932; and commenced the construction of a new bridge on each of said streets, to take the place of the old bridges as soon after said dates as the nature of the work permitted.

The construction of the Jefferson Street Bridge, together with the approaches thereto, was completed on or about the 25th day of November, A. D. 1932, and the Cass Street Bridge and approaches, on or about the 1st day of January, 1933. Both new bridges were so constructed as to provide a clearance thereunder of 16½ feet, thereby making the floors of both bridges approximately 18 feet higher at the crown than the floors of the old bridges. As a result thereof it was necessary to construct approaches to said bridges from both the east and the west, the east approach on Jefferson Street com-

mencing at a point 197 feet east of said bridge, and the west approach on Western Avenue commencing at a point 96¼ feet west of said bridge. Such approaches, both east and west, were constructed on a grade of approximately 7%.

The claimant, Frederick A. Rub, owns property adjoining the west approach to the Cass Street (Western Avenue) bridge; the claimants, Niles Burke, et al., then owned a sign located on the south side of Western Avenue, near the bridge; the claimant, Helen St. Julien, owns property adjoining the east approach on Jefferson Street; and the claimant, Samuel Stein and Sadie Stein, own property about 30 feet east of the east end of such approach.

So far as the question of damages is concerned, certain facts in each case are different, and each case will therefore be considered separately on the question of damages.

### No. 2373.
### SAMUEL STEIN.
### Damage to Real Estate.

### No. 2374.
### SAMUEL STEIN AND SADIE STEIN.
### Damage account of Loss of Business.

Claimants, Samuel Stein and Sadie Stein, filed their original claim with the Department of Public Works and Buildings on December 31, 1931. They are, and were at that time and prior thereto, the owners of a lot located on the south side of Jefferson Street known as 110 East Jefferson Street, having a frontage on that street of twenty-five and one-half (25½) feet and a depth of One Hundred Thirty-two (132) feet. Such lot is improved by a two-story brick building twenty-five and one-half by ninety feet, which is occupied as a wholesale and retail fish market on the first floor, and as a flat on the second floor. Claimant contend that during the time the Jefferson Street Bridge and the approaches thereto were in the course of construction, to-wit, from April 25th to November 26, 1932, the street in front of their property was constantly barricaded, and that as the result thereof they suffered a loss of business, and also contend that the real estate owned by them as aforesaid has depreciated in value as the result of the construction of the

Jefferson Street Bridge and the approaches thereto, and therefore claim damages for both of said items.

As to the item of damages for loss of business on account of the blockade of the street, this court held in the recent case of *Grassle* vs. *State*, No. 2339, that this item does not constitute a proper element of damage within the meaning of the Waterway Act, and in that case we denied an award therefor.

The decision in the Grassle case finds support in the following decisions of our Supreme Court, to-wit:

> *Osgood* vs. *City of Chicago*, 154 Ill. 194.
> *Lefkovitz* vs. *City of Chicago*, 238 Ill. 223.
> *Chicago Flour Co.* vs. *City of Chicago*, 243 Ill. 218.
> *Peck* vs. *Chicago Railways Co.*, 270 Ill. 34.
> *City of Winchester* vs. *Ring*, 312 Ill. 552.

Claimants insist, however, that this item is a proper element of damage under the wording of Section twenty-three (23) of the Waterway Act which reads as follows:

"The State shall be liable for all damages to real estate or personal property within or without the radius or zone of the 'Illinois Waterway' which shall be overflowed or otherwise damaged by reason of the construction, maintenance or operation of the "Illinois Waterway" and its appurtenances. It shall also be liable for all damages to persons caused by the construction, maintenance or operation of the 'Illinois Waterway' and its appurtenances, such damages to persons who are employees to be ascertained, determined and fixed as provided in this Act."

*Cahill's Revised Statutes*, 1933, Chap. 19, P. 113.

Claimants in their brief say:

"The provision providing for payment of all damages, means just what it says. It includes all damages whether within the constitutional provision as to liability or not, and includes also damages to business."

The question of the liability of the respondent for this item of damages therefore depends upon the proper construction of the words "all damages" as used in the Act. In determining the meaning of such words, we must ascertain the intention of the Legislature, and in ascertaining such intention we must consider all of the terms and provisions of the Act, as well as the purpose thereof. The words "all damages" cannot be considered alone but must be considered in connection with all of the other words of the section and the

Act. *People* vs. *Goldberg,* 332 Ill. 346; *City of Geneseo* vs. *Shearer,* 326 Ill. 82.

Section seven (7) of the Act enumerates the powers of the Department of Public Works and Buildings, and Paragraph eight (8) of said section authorizes the Department "to acquire by condemnation under the eminent domain laws of this State, all property necessary to be taken or damaged for the construction, maintenance, operation or repair of such Waterway and its appurtenances."

Section eight (8) of the Act provides that before the Department shall enter upon, take or damage private or public property for the construction, maintenance, enlargement or extension of the Waterway or its appurtenances, it shall make just compensation therefor, and if such just compensation cannot be agreed upon, it shall be ascertained, determined and found in the manner provided by the eminent domain laws of this State.

Section sixteen (16) provides for the rebuilding or reconstruction of any existing drainage or sewer systems constructed by any city or village which are destroyed or materially interfered with in the construction, maintenance, use and operation of the Waterway.

Section twenty (20) provides for the repair or reconstruction of present bridges and approaches thereto, which are or may be damaged or materially impaired in the construction of the Waterway.

Section twenty-three (23) provides that the State shall be liable for all damages to real or personal property which shall be overflowed or otherwise damaged by reason of the construction, maintenance, or operation of the Waterway and its appurtenances, and that the State shall also be liable for all damages to persons caused by the construction, maintenance or operation of the Waterway and its appurtenances.

There is nothing in any of the provisions of the Act which we have been able to discover, which indicates an intention on the part of the Legislature to establish any other or greater liability on the part of the State than now exists in eminent domain cases. The Department is specifically given the right to acquire all property necessary to be taken or damaged for the construction, maintenance or operation of the Waterway "by condemnation under the eminent do-

main laws of this State," and it is nowhere specifically provided that the measure of damages shall be different from that in condemnation cases under the eminent domain laws, or that any items or elements of damage shall be considered, other than those items or elements which have been recognized by our courts in eminent domain cases, since the adoption of the Constitution of 1870.

The only authorities cited by the claimants in their brief are the following, to-wit:

Opinions of Attorney General, 1931, p. 443-461;

*St. L. V. & T. H. R. R. Co.* vs. *Capps,* 67 Ill. 607.

So far as the opinion of the Attorney General is concerned, it is sufficient to say that the present Attorney General is not in accord with such opinion, but on the other hand, contends that the claimants are not entitled to any damages whatsoever on account of loss of business, and has filed his brief and argument herein, in support of such proposition.

The case of *St. L. V. & T. H. R. R. Co.* vs. *Capps,* 67 Ill. 607, cited by counsel for the claimants, arose out of an ordinance adopted by the Board of Trustees of the Town of Vandalia in 1868. Such ordinance granted the railroad company a right-of-way over, across and along the streets and alleys of said town, upon the agreement, among other things, that the railroad company would pay "all damages that may accrue to the property owners on said Main Street, by reason of the construction of said railroad."

Capps was the owner of several lots fronting on Main Street on which he had erected buildings, and among them a store in which he had prosecuted his business as a merchant for more than twenty years, doing a large business. The railroad company excavated said Main Street fifteen (15) or more feet deep and forty (40) or more feet wide, and constructed its railroad thereon, and Capps contended that he was entitled to be compensated for the damage done to his business by reason thereof. In that case the court held that under the ordinance in question, he was entitled not only to damages for the depreciation in value of his real estate, but was also entitled to damages for interruption to his business during such time as would have been necessarily employed in accommodating himself to another place of business equally eligible, and his removal thereto.

That case, however, is clearly distinguishable from the case at bar. The Capps case arose in 1868, and the law in force at that time (prior to the adoption of the Constitution of 1870) did not authorize the payment of damages to owners of property damaged but not taken, and the decision must therefore be read in the light of the law as it existed at that time.

In the case of *Chicago Flour Co.* vs. *City of Chicago*, 243 Ill. 268, the plaintiff sued the City of Chicago to recover damages which it sustained as the result of being deprived of the use of a certain switch track, during the time the same was being elevated pursuant to the requirements of a track elevation ordinance of said City of Chicago.

The track elevation ordinance contained a provision to the effect that nothing therein contained should be so construed as to require the railway company to pay any direct, incidental or consequential damages to adjacent property or business caused by the elevation of the tracks, and the City of Chicago therein agreed ''that all such damages, if any there be, shall be adjusted and paid by the City of Chicago.''

The plaintiff in that case contended, as the claimants here contend, that under the wording of the ordinance, the City of Chicago was required to pay ''all damages,'' and that such words included damages resulting from its being deprived of the use of the switch track, and relied upon the Capps case to sustain its contention. In disposing of such contention and in considering the decision in the Capps case, the Supreme Court there said:

"The only invasion of their rights complained of, is the temporary interference with the ordinary means of access to and egress from their property during the progress of the work. It is well settled that inconvenience, expense or loss of business occasioned to abutting owners by the temporary obstruction of a public street, and the consequent interference with their right of access to their property, made necessary by the construction of a public improvement, gives no cause of action against the municipality. The constitution provides no remedy for the property owner under such circumstances. Such claim is not damage to property not taken, within the meaning of the constitution. *Lefkovitz* vs. *City of Chicago*, 238 Ill. 23; *Osgood* vs. *City of Chicago*, 154 id. 194; *Northern Transportation Co.* vs. *City of Chicago*, 99 U. S. 635.

"It is insisted, however, in behalf of the appellants, that the paragraph of the ordinance quoted above constituted a contract on the part of the city to pay all damages of the character here involved and that a recovery may be had therefor under the ordinance. That provision of the ordinance was not intended to impose upon either party a liability which did not

before exist, but was intended to determine, as between the parties to the agreement, which should pay the damages for which it might be reasonably anticipated one or both would become liable in the prosecution of the work. It is true that the word "damages", as used in the ordinance, is capable of the meaning insisted upon by the appellants, and we are referred to the case of *St. Louis, Vandalia and Terre Haute Railroad Co.* vs. *Capps*, 67 Ill. 607, and *Same* vs. *Same*, 72 id. 188, where an ordinance granted to a railroad company the right-of-way over, across and along the streets and alleys of a town upon condition that the railroad company should be held bound to pay all damages that might accrue to the property owners on Main Street by reason of the construction of said railroad, and it was held that the damages there included damages for the interruption of a property owner's business during such time as would be necessarily employed in securing another place of business equally eligible and in removing thereto. This case arose prior to the adoption of the constitution of 1870, and at a time when, in the absence of the ordinance, neither the town nor the railroad company would have been liable for damages by reason of the construction of the railroad in the street. *Moses* vs. *Pittsburg, Ft. Wayne and Chicago Railroad Co.*, 21 Ill. 515; *Murphy* vs. *City of Chicago*, 29 id. 279.

"The object of the construction of contracts is to arrive at the intention of the parties. The subject matter of the contract, the nature of the instrument, the intention and purpose of the parties and the object they had in view will be taken into consideration and the intention carried into effect, so far as the rules of language and the rules of law will permit. (2 *Parsons on Contracts,* \*499). In the Capps case there was no liability on the part of either the town or the railroad company for any damages whatever. The object of the town in inserting the provisions concerning damages was manifestly to secure the property owners on Main Street against damages of every character, the meaning of the word never having been adjudicated in a similar case. In the present case, the city, and perhaps the railroad company, would be liable for certain damages, the meaning of the word having been defined by many adjudications, and the manifest object of the parties was, not to protect property owners and to secure them their damages, but to determine, as between the city and the railroad company, who should pay them if any were to be paid and to relieve the railroad company from their payment. The property owners were protected by the law which gave them a right to recover damages, which did not exist in the Capps case. The damages which could be recovered were defined by law. We think it apparent that only such damages were contemplated in the ordinance and that the object of the provision was to afford indemnity to the railroad companies, and, as between them and the city, to impose upon the latter the liability for all damages legally recoverable against either or both on account of the work mentioned in the ordinance."

The rule laid down in the case of *Chicago Flour Co.* vs. *City of Chicago* has been approved in numerous cases since that time. *Catholic Bishop of Chicago* vs. *City of Chicago,* 177 Ill. App. 187; *Foley Mfg. Co.* vs. *City of Chicago,* 194 Ill. App. 532; *Otis Elevator Co.* vs. *City of Chicago,* 263 Ill. 419;

*Peck* vs. *Chicago Railways Co.,* 270 Ill. 34; *Lord* vs. *City of Chicago,* 274 Ill. 313.

In the various provisions of the Waterway Act hereinbefore referred to, the legislature apparently sought to provide compensation to all of the different persons, and for all the different properties, public and private, which might be damaged by reason of the construction, maintenance or operation of the waterway, but in none of such provisions is there any evidence of an intention on the part of the legislature to enlarge the liability of the State, or provide for any other or different compensation from that provided by the Eminent Domain Law.

As we view it, the words "all damages" as used in Section 23 of the Waterway Act mean "all damages legally recoverable".

We are of the opinion that the rule laid down in the Grassle case is the correct rule of law, and are not disposed to depart from the same, and consequently cannot allow an award as to the item of damages for loss of business.

As to the item of damage to real estate, it is admitted that there was no change in the grade of the street in front of claimants' property; that the grade commenced about thirty (30) feet west of claimants' property and extended westward, and that claimants remodeled their building after the construction of the Jefferson Street Bridge and the approaches thereto.

Two real estate experts testified on behalf of the claimants and two on behalf of the respondents. The experts for claimants estimated the damage as of the date of the closing of the Jefferson Street Bridge, at Sixteen Hundred Dollars ($1,600.00), but admitted that such depreciation was more or less an arbitrary figure.

Two experts for the respondent testified that in their opinion the property of the claimants had sustained no damage by reason of the construction of the Bridge. The court viewed the property (pursuant to authority given in the stipulation on file), and after a careful consideration of the evidence, is forced to the conclusion that claimants have failed to show any damage to their real property by reason of the construction of the Jefferson Street Bridge or the approaches thereto.

Award is therefore denied in cases No. 2373 and 2374 and the cases dismissed.

## No. 2375.
### NILES BURKE AND JOHN MARSO.

Prior to and at the time of the construction of the Cass Street Bridge and the approaches thereto, claimants were engaged in the outdoor advertising business under the name of B. & M. Advertising Service. They had located an electric display sign twenty-five (25) feet long and fourteen (14) feet high on the south side of Cass Street, near the west end of the Canal Bridge, under a lease from year to year with Frederick A. Rub, by the terms of which lease they paid him twenty-five Dollars ($25.00) per year, and which said lease expired in November, 1932.

Lessees leased the space on this sign to Joliet Warehouse and Transfer Co. at a rental of Twenty-five Dollars ($25.00) per month.

In the Spring of 1932, Cass Street was closed to traffic on account of the work being done thereon, and the value of the sign for advertising purposes was thereby destroyed, and the lessees thereof refused to pay any rent therefor after May 1, 1932.

Thereafter and in the course of the work of tearing out the old Cass Street Bridge and constructing the new bridge and the approaches thereto, the sign was torn down without notice to claimants. The value of the sign at the time of the destruction thereof was Three Hundred Dollars ($300.00), and claimants have filed their claim to recover that amount, and in addition thereto the sum of One Hundred Fifty Dollars ($150.00) for loss of rent from May, 1932 to November, 1932, at Twenty-five Dollars ($25.00) per month.

Claimants introduced some evidence to show that part of the sign was used in barricading the street, and conclude therefrom that such sign was torn down by the respondent.

Mr. M. V. Ahlvin, Assistant Chief Engineer, Division of Waterways, testified (A. 130) that he knew from the surveys that the sign was within the street lines; that the sign was situated wholly on the street (A. 127) and that it was impossible that part of it should have been used in the con-

struction of the barricade, as the sign was still standing after the barricade was built and was not removed until about three months after the construction of such barricade (A. 127).

Mr. Burke testified that the sign was rebuilt just previous to the time the bridge was put in; about four or five months before it was destroyed (A. 78);—notwithstanding the fact that it had been known for many months prior to that time, that the new bridge would be put in at an elevation of sixteen and one-half (16½) feet above the water level.

There is no question but what the sign was destroyed, but there is nothing in the record to show by whom it was destroyed. There is no evidence connecting the State or any officer or agent thereof with the destruction of such sign.

Taking into consideration the fact that the sign was constructed in the street, and that there is nothing in the record to show that it was destroyed by the State or any representative of the State, we cannot allow an award against the State for the destruction thereof.

Under the rule laid down in the Stein cases, Nos. 2373 and 2374, claimants are not entitled to an award for the loss of rentals resulting from the temporary closing of the street.

Award is therefore denied and the case dismissed.

### No. 2377.
#### FREDERICK A. RUB.

Claimant seeks to recover damages to two (2) lots, one being at the Southeast corner of Western Avenue and Bluff Street, and the other immediately adjoining on the south. The corner lot has a frontage of twenty-five (25) feet on Bluff Street and eighty-five (85) feet on Western Avenue, and is improved with a two-story frame building, 25 x 60 feet, and a small addition in the rear, 15 x 18 feet, which said building fronts on Western Avenue and has a corner entrance at the northwest corner of the building. Claimant bought this property twenty-seven (27) years ago for Twelve Thousand Dollars ($12,000.00), the present building being then upon the property.

The other lot, which fronts on Bluff Street, is 50 x 85 feet, and was purchased by claimant fourteen (14) or fifteen (15) years ago for Seventeen Hundred ($1,700.00) or

Eighteen Hundred Dollars ($1,800.00). There was then a dilapidated old one-story frame building thereon. The south half of such building was torn down some years ago, so that for the past five (5) or ten (10) years the North twenty-five (25) feet of this second lot has been improved by a one-story frame building 25 x 90 feet, and the south half of such lot has been vacant.

The new bridge is eighteen (18) feet two (2) inches higher at the crown and 6.29 feet higher at the west wall of the Illinois Waterway than the old bridge. The west approach commences ninety-six (96) feet three (3) inches west of the bridge, and thereby the grade on the Western Avenue approach was raised 3.23 feet, resulting in a seven per cent (7%) grade commencing at a point thirteen (13) feet east of claimant's west property line. There has been no change in grade at the front entrance to the building, the new grade commencing at a point thirteen (13) feet east of such entrance.

George M. Munroe and Thomas P. Lennon, real estate experts for the claimant, estimated the damage of claimant to be Sixty-five Hundred Ninety-six Dollars ($6,596.00), based upon the fair cash value of the property prior to the improvement, and the fair cash value of such property subsequent to the improvement. In explaining how they arrived at that valuation, Mr. Munroe testified as follows:

"Inasmuch as this property was not improved to its highest and best use at that time there was only what you might call a shack located on the property, at least it was a building in very poor condition. Any capitalization of income for that building would not show anything of the true value of the land. The property was unique in that there is very little property like it between the river and the hill, so there were no sales that we could use for comparison, consequently we made a calculation of the net income applicable to the land if the building were improved to the highest and best use. In our judgment the highest and best use of the property would be in a one-story and basement building divided into shops, each with a separate heating plant and with a dividing wall between. I got an estimate on the cost of such a building from Hanson-Peterson Company who are one of the largest and most reliable building contractors in Joliet. I also got an estimate of the cost of construction of such a building from them on the slope as proposed by the State. We then calculated the rental obtainable for these stores, both before and after the change in grade, and from these calculations capitalized the net income, after deducting expenses and depreciation to arrive at the total of the property. Deducting the cost of the building would leave a residual value for the land. Our

appraisal of the value of the land before the changes were made as of 1930 and based on a frontage of 86½ feet on Western and 75 feet on Bluff was $19,500.00. Our appraisal of the value of the land after the construction of the waterway and of the Cass Street Bridge and of the approaches was $7,000.00.

"Q. You treated that as being Western Avenue property, did you not? In other words the structure that you theoretically superimposed faced Western Avenue?

"Yes, sir.

"Q. Why did you do that?

"A. Because Western Avenue is a better street—higher value street, and any building to be erected on it would face the higher value street rather than the side street which, in this case, would be Bluff Street regardless of how the lots might be platted."

The valuation placed on the property by these experts was based upon their opinion that the property was not improved to its highest and best use at this time; and that the highest and best use of the property would be a one-story and basement building divided into separate shops all facing on Western Avenue, and covering the corner lot as well as the lot adjoining the corner.

This was not the proper method of arriving at the amount of damage sustained by the claimant. Without doubt, the rental value of the property should be taken into consideration, along with all other proper elements, in determining the value of the property. *City of Chicago* vs. *Witt,* 289 Ill. 520; *City of Chicago* vs. *Jackson,* 333 Ill. 345.

The rental value to be considered, however, should be the present rental value and not the rental value which might possibly be anticipated as the result of demolishing the present buildings and constructing a new building of an entirely different type.

The evidence shows that the corner lot, having a frontage of twenty-five (25) feet on Bluff Street and eighty-five (85) feet on Western Avenue, was acquired by claimant about 1907, and that such lot and the building thereon is occupied as a saloon, and has been occupied for that purpose and as a soft drink parlor for many years; that the adjoining lot, having a frontage of fifty (50) feet on Bluff Street and a depth of approximately eighty-five (85) feet, was acquired by claimant about 1920, and that such lot and the building thereon was occupied as a bowling alley and transfer office. There is no evidence in the record which discloses

any damage to this lot. Nevertheless, the experts for claimant, in making their estimates of damages, based their values upon rentals to be obtained from a building to be erected on both lots.

Considering the corner lot alone, a building such as was contemplated by such experts could not be erected, as the corner lot was only twenty-five (25) feet in width. Furthermore, there is nothing in the record to indicate that under the proposed construction there would be any demand for such rooms for rental purposes, and the evidence as to local conditions makes it very questionable whether such rooms could be rented to any advantage.

The true measure of damages for land not taken is the difference between the fair cash market value of the property unaffected by the improvement, and its fair cash market value as affected by it. *Department of Public Works* vs. *Caldwell*, 301 Ill. 242; *Department of Public Works* vs. *McBride*, 338 Ill. 347.

Damages must be direct and proximate, and not such as are merely speculative and remotely contingent. *Department of Public Works* vs. *McBride*, 338 Ill. 347; *Illinois Power and Light Corporation* vs. *Barnett*, 338 Ill. 499.

Considering the law as laid down by our Supreme Court, we are forced to the conclusion that the opinions of the experts for the claimant were based upon matters which they had no right to take into consideration in arriving at their conclusions.

Charles H. Noble and George H. Hill, real estate experts produced by the respondent, each placed the damage to the claimant's property at Three Thousand Dollars ($3,000.00). They testified that the real frontage of the property is on Bluff Street; that the property has been used as a saloon for many years; and that it is now being put to its best use, to-wit, for a saloon.

The court viewed the premises, and considering all of the evidence, we feel that if claimant is awarded Three Thousand Dollars ($3,000.00), he will be justly and fully compensated for the damage he has sustained.

IT IS THEREFORE ORDERED that an award be entered in favor of the claimant, Frederick A. Rub, for the sum of Three Thousand Dollars ($3,000.00), payment to be made by

the Department of Public Works and Buildings of the State of Illinois, within fifteen (15) days from the entry of this order, in accordance with the stipulation heretofore filed herein.

## No. 2378.
### ALBERT ST. JULIEN AND FRANK ST. JULIEN.

## No. 2379.
### HELEN ST. JULIEN.

Helen St. Julien is the owner of a lot on the north side of Jefferson Street, known as 103 East Jefferson Street, which lot has a frontage of twenty-four (24) feet on Jefferson Street and a depth of eighty-six (86) feet; it is improved by a frame building which is two stories high in front and one story in the rear, the front portion being approximately 21 x 40 feet, and the rear portion 21 x 30 feet, which said building is situated 110 feet 2 inches east of the east end of the Jefferson Street Bridge. For a long time prior to the construction of such bridge, this building was occupied by the claimants, Albert and Frank St. Julien, for the sale of harness goods, luggage and bags, trunks, suitcases, valises and auto supplies, the value of the stock being approximately $3,500.00. The stock was an open display.

The claimant, Helen St. Julien, seeks to recover damages to her property as the result of the construction of the bridge, and the approaches thereto, and the claimants, Albert and Frank St. Julien, seek to recover damages for the loss of business during the time the bridge and the approaches thereto were being constructed, as well as damages for the injury done to their mercantile stock on account of the dirt and dust which naturally resulted from the making of the improvement.

Mr. George M. Munroe and Mr. Thomas P. Lennon, real estate experts for claimant, Helen St. Julien, stated that in their opinion, the damage to the real estate as of the date of the taking out of the Jefferson Street Bridge, to-wit, April 25, 1932, was $5,600.00 plus the cost of remodeling the building and raising the same to conform to the new grade.

Mr. George H. Hill and Mr. Charles N. Noble, real estate experts called by the respondent, testified that in their

opinion the damage to the real estate was $3,600.00 plus the cost of remodeling the building and raising the same to conform to the new grade.

Mr. Alfred Locher, an estimator for the Kaiser-Ducett Co., a construction company, and Mr. Oscar C. Kaiser, President of the said Company, estimated the cost of remodeling the building and raising the same to conform to the new grade, at $2,500.00, while Mr. Ahlvin, Assistant Chief Engineer, Division of Highways, a witness for the respondent, estimated the cost of such work to be $1,500.00.

Mr. Locher and Mr. Kaiser who estimated the cost of remodeling the building and raising the same to conform to the new grade, as witnesses for the claimant, and Mr. M. V. Ahlvin, who made similar estimates on behalf of the respondent, were agreed as to the method to be followed, but differed as to quantities and prices. Mr. Locher and Mr. Kaiser prepared a detailed and itemized statement of costs and included among the items a total of Seven Hundred Fifty-four Dollars ($754.00) for raising the building and Six Hundred Fifteen Dollars ($615.00) for masonry work. Mr. Locher stated that if he received a figure for the doing of the work less than the amount which they estimated, their estimate would be lowered correspondingly.

Mr. Edward Anderson, a general masonry contractor of Joliet, with twenty years' experience in his line of work, estimated the cost of the masonry work at Four Hundred Dollars ($400.00), being Two Hundred Fifteen Dollars ($215.00) less than the amount of the estimate made by Mr. Locher and Mr. Kaiser.

Mr. Sam Davidson, a house mover of Joliet, having twenty-five years' experience in work of that kind, estimated the cost of raising the building at Four Hundred Ninety Dollars ($490.00), being Two Hundred Sixty-four Dollars ($264.00) less than the estimate of Mr. Locher and Mr. Kaiser. The estimate prepared by Mr. Locher and Mr. Kaiser also contains an item of Two Hundred Three Dollars ($203.00) for ''general conditions'' which is not further itemized or explained.

Considering all of the evidence, and particularly the fact that the estimate made by the witnesses for the claimant for raising the building, was Two Hundred Sixty-four Dol-

lars ($264.00) higher than the price for which the work could have been done, and that their estimate for masonry work was Two Hundred Fifteen Dollars ($215.00) higher than the price for which the work could be done, we feel that the estimate made by Mr. Ahlvin forms a more reliable basis for awarding damages.

The court viewed the premises and after giving careful consideration to all of the testimony in the record, we feel that if the claimant, Helen St. Julien, is awarded $5,100.00, she will be justly and fully compensated for all of the damage that she has sustained by reason of the construction of the bridge in question and the approaches thereto.

Award is therefore entered in favor of the claimant, Helen St. Julien, and against the State of Illinois for the sum of Fifty-one Hundred Dollars ($5,100.00), payment to be made by the Department of Public Works and Buildings of the State of Illinois, within fifteen days from the date of the entry of this order, in accordance with the stipulation heretofore filed herein.

## No. 2378.

### ALBERT ST. JULIEN AND FRANK ST. JULIEN.

With reference to the claim of Albert St. Julien and Frank St. Julien for damages on account of loss of business during the time the bridge and the approaches thereto were being constructed, we have heretofore held in the case of *Grassle* vs. *State*, No. 2339 and *Samuel Stein and Sadie Stein* vs. *State*, No. 2373, that the State is not liable for such damages, and consequently no award may be allowed therefor.

With reference to the claim of Albert St. Julien and Frank St. Julien for damage to their mercantile stock on account of the dirt and dust which naturally resulted from the making of the improvement, the evidence in the record is rather meagre. Albert St. Julien testified that they carried a mercantile stock of $3,500.00, consisting of men's billfolds, ladies' handbags, trunks, suitcases, valises, auto supplies and harness goods; that the stock was an open display and was damaged by the dust, sand and cement which came into the store day after day during the progress of the work. No

testimony as to this item of damage was offered on behalf of the respondent.

The evidence offered on behalf of the claimant showed a direct physical injury to the property of the claimants, for which they are entitled to be compensated. *City of Winchester* vs. *Ring,* 312 Ill. 544.

There is very little evidence to show what, if anything, the claimants did to minimize their loss. Under the law they were required to make all reasonable efforts to render the loss as small as possible, and they are not permitted to recover damages for any increase of loss consequent upon a failure to perform that duty. *Hartford Deposit Co.* vs. *Calkins,* 186 Ill. 104; *C. & N. W. Ry. Co.* vs. *Stroud,* 129 Ill. App. 348; *Scherrer* vs. *Baltzer,* 84 Ill. App. 126.

The burden of proving that claimants failed to use a reasonable degree of diligence in minimizing their damages was on the respondent, and in the absence of any evidence on that question, we must take it for granted that the claimants performed their duty in that regard.

From claimants evidence, it appears that the damage to the stock was approximately twenty per cent (20%), making a loss of Seven Hundred Dollars ($700.00). No evidence was offered by the State to controvert such testimony.

Award is therefore entered in favor of the claimants, Albert St. Julien and Frank St. Julien, and against the State of Illinois, for the sum of Seven Hundred Dollars ($700.00), payment to be made by the Department of Public Works and Buildings of the State of Illinois, within fifteen (15) days from the date of the entry of this order, in accordance with the stipulation heretofore filed herein.