JAMES PETERS v. CHARLES ELMER PETERSON.

120 N. W. (2d) 846.

March 15, 1963—No. 38,733.

*Rischmiller, Wasche & Hedelson,* for appellant.
*Schermer & Gensler,* for respondent.

NELSON, JUSTICE.

Appeal from an order denying plaintiff's motion for a new trial in an action for damages resulting from a collision between an automobile owned and operated by him and a garage being moved by defendant. After the jury returned a general verdict for defendant, plaintiff moved for a new trial on all issues, which motion was denied.

Since defendant was the prevailing party below, he is entitled to have all conflicts in the evidence submitted resolved in his favor. The following statement of the facts is based upon that principle. On December 3, 1959, at approximately 6 a. m., defendant, a house mover, was engaged in hauling a garage in a northerly direction along Second Street Northeast at a point between the intersections of Thirteenth Avenue and Twelfth Avenue in the city of Minneapolis. The garage, which was placed on a flat-bed trailer, was 18 feet wide and 20 feet long and was set upon a series of three 8 x 10 cross timbers, about 19 feet long. The trailer was approximately 20 feet long and 8 feet wide, so lengthwise all of the garage rested on the trailer, but crosswise the garage extended 5 feet over each side of the trailer. Because of the darkness at that time of day, defendant put a kerosene flare at the left front corner of the garage, placing the flare upon planks spiked above the cross timbers at a point about 42 inches above the ground. He put flashers at the rear corners of the garage, but did not place any light at its front right corner.

To move the garage defendant had attached the trailer to an Autocar tractor, which he drove. He had stationed an employee as a flagman on each side of the Autocar. In addition another employee drove a White tractor approximately 300 feet ahead of the Autocar and another followed the trailer in a pickup truck. Both the White and the Autocar tractors carried clearance lights above their cabs

and on their outside mirrors. The trailer itself had four clearance lights on each side and four lamps at the rear.

It appears that shortly before the collision occurred the operator of the White tractor stopped his vehicle to the north of the intersection of Second Street Northeast with Thirteenth Avenue and began to flag down traffic proceeding south on Second Street. He flagged a bus and a pickup truck, both of which went around the Autocar tractor and the trailer without difficulty. A few moments later plaintiff's automobile, which he was operating, approached the pilot truck at a speed of approximately 40 miles per hour. The driver of the pilot truck failed in his attempt to flag down plaintiff's automobile. The flagmen stationed on each side of the Autocar tractor, who carried flashlights, also attempted to flag down plaintiff's vehicle but were forced to jump to safety on the running board of the truck. Defendant, who was driving the Autocar tractor, also attempted to stop plaintiff by flicking the tractor's headlights. However, plaintiff's vehicle passed under the left front corner of the garage, lifting it into the air, then continued for a distance of 161 feet, and was brought to a stop by striking a cement wall on the east side of the street.

As the collision occurred, the left corner of the windshield area of plaintiff's car collided with the left front corner of the garage, driving two large planks through the windshield and out the rear window of the car. Plaintiff was severely injured, a piece of wood about 1 inch wide and 6 inches long being driven into his skull. He has no recollection of seeing the garage or of seeing any lights in his driving lane and does not recall the collision itself, presumably because of the injuries he sustained. There were no skid marks left by plaintiff's automobile.

■ Plaintiff assigns as error the exclusion of certain evidence which he attempted to introduce. He contends that defendant violated Minn. St. 169.51, which provides in part:

"Every such vehicle having a width, including load thereon, at any part in excess of 80 inches shall be equipped with four clearance lamps, two located on the front at opposite sides and not more than six inches from the extreme outer edge of the vehicle or load, * * *. The front

clearance lamps shall be located at a height of not less than 24 inches above the head lamp centers."

Since violation of that statute is prima facie evidence of negligence, plaintiff contends that expert testimony with respect to custom and practice in lighting loads at night, examples of lighting which conform to the statute's requirements which he wished to introduce as exhibits, and evidence that such lighting can be easily and inexpensively installed were all material in determining whether violation of the statute was justified.

With respect to custom and practice "in the trucking trade" concerning lighting loads at night, plaintiff called Clifford Stuart Marx. He also intended to introduce through him, as exhibits, clearance lights customarily used in the industry and to have him testify that their cost was $1.09 per light. However, the court sustained objections based on lack of foundation and immateriality. The following is an example of plaintiff's attempts to introduce such evidence:

"Q. * * * Now, Mr. Marx, are you familiar, because of the experience you have related, with the custom and practice in the trucking trade of lighting loads that are either extended over the side or overhanging in the rear?

"A. Yes, I am.

"Q. Will you tell us what the custom and practice in the trucking trade is with respect to the lighting of such loads?

"Mr. Schermer: That is objected to, your Honor, as immaterial.

"The Court: Sustained."

It is, of course, clear that this ruling foreclosed testimony as to the cost of various clearance and marker lights with which the witness may have been familiar.

A review of the record might well lead to the conclusion that Mr. Marx knew little, if any, more about customary practices in the house-moving field than did the members of the jury. Determination of the qualifications of an expert witness is a matter largely within the discretion of the trial court, and we are unable to discover anything in the

record which would indicate that the trial court abused that discretion in its rulings.[1]

■ We think that there was ample basis in the evidence upon which the jurors, by applying their common knowledge and experience to the information provided by the testimony and exhibits, could determine whether defendant was guilty of negligence which was a proximate cause of the accident.

The trial court in submitting the case to the jury advised them of plaintiff's claim that defendant was negligent in failing properly to light the tractor and trailer, and its load, and in failing properly to warn that the load was obstructing a portion of the southbound traffic lane in which plaintiff was traveling. The court also advised them that it was the claim of defendant that plaintiff was guilty of contributory negligence in failing to keep a proper lookout, in failing to keep his automobile under proper control, in failing to respond to warning signals, and in driving at an excessive rate of speed. The court properly instructed on the requirements of the traffic code as to speed restrictions, clearance and marker lamps, and distribution of lights.

Plaintiff apparently did not voice any dissatisfaction with the instructions when they were given. On appeal, however, he contends that the court's instructions were erroneous because they permitted the jury, if it found there was no light on the left front corner of the garage (the impact corner), to excuse that violation of the "clearance lamp" statute on the basis of defendant's testimony as to his customary practice respecting lighting. (Defendant did not claim he had a light on the right front corner of the garage and the court charged the jury that to that extent he was guilty of negligence as a matter of law.)

Since defendant admitted that there was no light on the right front corner of the garage and attempted no excuse or justification, the trial court properly instructed the jury that he was guilty of negligence as a matter of law in this respect. The trial court further instructed generally that a violation of any of the statutes discussed in the charge was negligence unless all of the facts, conditions and circum-

---

[1]Carmody v. Aho, 251 Minn. 19, 86 N. W. (2d) 692; Hartmon v. National Heater Co. 240 Minn. 264, 277, 60 N. W. (2d) 804, 812.

stances disclosed by the evidence furnishes such an explanation, excuse, or justification for the violation of the statute that the jury was not satisfied by a fair preponderance of the evidence that it was negligence to violate such statute. This is a correct statement of the law.

It is a long-established general principle that new trials are to be granted only for errors materially affecting substantial rights of the aggrieved party. Moreover, a new trial will not be granted even where there is error if from the whole case it appears that the result will not be changed. See, 14 Dunnell, Dig. (3 ed.) § 7074, and cases cited.

We are unable to find from the record here that the court committed prejudicial error in any of its evidentiary rulings. The facts were clearly for the jury's determination and amply support its verdict.

Affirmed.