BUDRICK D. TESLOW v. MINNEAPOLIS-HONEYWELL
REGULATOR COMPANY AND OTHERS.

141 N. W. (2d) 507.

March 18, 1966—No. 39,412.

*Robins, Davis & Lyons, Harding A. Orren, Lawrence Zelle,* and *John F. Eisberg,* for appellant.

*Strong, Tully & Bush* and *Wellington Tully,* for respondent.

KNUTSON, CHIEF JUSTICE.

This is an appeal from an order of the trial court denying plaintiff's motion for a new trial.

The appeal involves only the propriety of the trial court's rulings in excluding certain opinions of experts called by plaintiff.

The facts may be briefly stated. Plaintiff was employed by the United States Department of Army at a Nike Missile Base located near Bethel, Minnesota. His duties consisted of a routine inspection each day of the boilers and heating plants in the various buildings on the base. He was not expected to repair such boilers and heating plants, but the inspection involved merely going to the room where the boiler was located and listening to it through two cycles of operation, which took him about 10 minutes.

On the morning of October 6, 1959, plaintiff performed this routine check and found the boiler in the mess hall to be operating normally. About 1 o'clock in the afternoon he was informed by someone in the mess hall that they were not getting sufficient hot water to clean their dishes. Plaintiff thereupon went to the boilerroom for that building to

inspect the burner. He noticed that the burner was clicking on, igniting, and clicking off, in about the time, as he related it, that it would take to light a cigarette with a match and blow the match out. This rapid cycling was not normal, so he notified his supervisor, Mr. William H. Hoffman, as he had been instructed to do if he found something wrong with the boilers. He then returned to other work. At about 2 o'clock plaintiff was notified that Mr. Hoffman could not come to the boiler site that afternoon, so he returned to the mess hall boilerroom. He noticed that the boiler was not yet operating properly and turned to throw the switch that would shut off the burner. At that moment the burner exploded and threw plaintiff against a stairway on which he struck his head and back and sustained the injuries for which he now seeks recovery against those allegedly responsible for the explosion. After the explosion plaintiff noticed that the burner was burning, shut the doors which had blown open and partly off, and threw the switch which turned the burner off. He then left the base.

The military men on the base were not permitted in the boilerroom. The subcontractor who had inspected the burner when it was installed was notified of the malfunction and sent its serviceman, Ward Holliday, to the boilerroom in the evening of the day when this occurrence took place. He testified that he found three things wrong with the unit when he got there: The electrodes which ignite the oil were spaced improperly; a photoelectric cell which controls the safety features of the burner was in backwards; and a Honeywell relay control was not functioning properly. After adjusting the electrodes and installing the photoelectric cell properly, Holliday found the burner could be operated by manually controlling the Honeywell relay. The next day the relay was replaced by a new one procured from Honeywell, and after its installation the burner functioned properly. The relay removed from the burner apparently was returned to Honeywell in accordance with an exchange or trade-in procedure, and even though everyone has made a search for it, it has not been found.

Plaintiff called as an expert witness one Harold Cartier, who is a mechanical and metallurgical engineer but not an electrical engineer. The court permitted Mr. Cartier to express his opinion on all matters

involving the mechanical failure of the oil burner but refused to permit him to express an opinion as to electrical aspects of the failure of the Honeywell relay to operate properly. Plaintiff then called one Edward A. Rippie, a graduate electrical engineer, and attempted to have him express his opinion as to the reason for the failure of the Honeywell relay. The court permitted him to explain the operation of the relay but refused to permit him to express his opinion as to the actual cause of the failure of the relay to operate properly. The correctness of these two rulings present the issues on this appeal.

It has now become axiomatic in this state that the sufficiency of the foundation to qualify a witness as an expert is a question left almost entirely to the trial court, and we will not reverse unless it is clearly apparent that the trial court was wrong. The ruling of the trial court is subject to review but must be considered in the light of the general rule that ordinarily the question is one for the trial court. Woyak v. Konieske, 237 Minn. 213, 54 N. W. (2d) 649, 33 A. L. R. (2d) 1241; Carmody v. Aho, 251 Minn. 19, 86 N. W. (2d) 692. The purpose of such evidence is to assist the jury, not to take over its functions. The mere fact that the opinion relates to the ultimate fact that must be found by the jury does not necessarily exclude it. See, Hofstedt v. International Harvester Co. 256 Minn. 453, 98 N. W. (2d) 808.

In these days, when it seems possible to procure experts who claim ability to reconstruct almost any occurrence without any personal knowledge of the pertinent facts, it is important that the trial court keep them in the realm of witnesses rather than permit them to become participants or advocates.

Mr. Cartier did not visit the scene of the accident until about a year after it occurred. He was permitted to express his opinion as to the mechanical operation of the oil burner and the function of the Honeywell relay. When he was asked for his opinion as to the cause of the explosion, he said:

"My opinion is that the conditions would require some kind of defective condition in the control relay which would result in a cycle operation. As this cycling operation takes place each time the oil is injected, it is not all burned because much of that is droplets, and some of the oil

gets through and is deposited on the brick work. This condition continues many, many times, with continual increase and temperature of the bricks, with an increased amount of oil, and in spite of the fact that the draft is pulling vapor up the stack we are making the condition worse and worse all the time. We finally reach a critical situation where if ignition comes on, at this time it will cause an explosion."

A motion to strike on the grounds that the opinion was founded on "assumed facts" was sustained by the court.[1] Thereafter followed a long discussion between the court and counsel, and it is apparent that the final ruling of the court was based on the belief of the trial judge that the witness was not qualified as an electrical expert. As a matter of fact, the court invited counsel to qualify him further, but this was not done. While the ruling is a close one and we would have been inclined to hold that it was not error to permit the witness to express his opinion if based on a proper question, we are of the opinion that here no harm was done because, after the ruling on the initial objection, Mr. Cartier was permitted to express his opinion on practically everything involved. He stated that in his opinion the failure of the burner to operate properly was due to the malfunction of the Honeywell relay. In the record we find the following:

"Q. Now, is there any other item in the entire circuit or circuitry to this burner other than the Honeywell Protecto relay which would cause or could cause the type of cycling that's been described?

"A. No, there is not.

"Q. Now, could a malfunction of the Protecto relay cause such a cycling?

"A. Yes, it could."

His opinion as to what actually caused the Honeywell relay to fail would have been of no further help to the jury than the opinion he did express. We are content to leave the ruling as to his qualification to the trial court.

With respect to Mr. Rippie, there was no question about his qualifica-

---

[1] We assume that what counsel intended to say was that it was based on assumed facts not found in the evidence. Nearly all hypothetical questions are based on facts assumed to be true.

tion as an electrical engineer. The difficulty with his opinion was that he had never seen or examined the relay that was involved. He was familiar with the general makeup of such relays and attempted to base his opinion on the failure of a cold solder joint to hold; but what actually caused the relay to fail to operate properly was left entirely in the realm of speculation and conjecture. His experience lay almost entirely in the field of mechanical computers. He had no experience with oil burners. A question arose whether vibration could cause a loose joint which would cause the relay to malfunction. We find the following colloquy between the court and plaintiff's counsel:

"Q. [By plaintiff's counsel] Mr. Gaughan, I believe it was, asked you whether or not we are talking about some external force to cause the joint to come loose. Is the vibration from its being mounted on an oil burner a sufficient external force for this purpose?

"Mr. Tully: Objected to as no foundation.

"The Court: Sustained. You may lay a foundation if he knows about oil burners of this kind and how much vibration. You better ask him.

"Mr. Orren [plaintiff's counsel]: Well, Your Honor, I am sure he doesn't know about oil burners of this particular kind and that's why I hesitate to ask him."

Here again it was for the trial court to determine whether the opinion would be of any help to the jury. They already had evidence from which they could infer that the burner ceased to function as a result of the failure of the Honeywell relay. For plaintiff to recover, it was necessary that the malfunction be shown to be due to a defect in the manufacture of the relay or in the use of improper material, or something that related to impropriety of the apparatus when it was received from the manufacturer. There was evidence in this case from which the jury could have found that not only the relay but the electrodes and the photoelectric cell had been tampered with between the time when plaintiff observed the burner functioning properly in the morning and when he observed it malfunctioning in the afternoon. While the evidence is probably sufficient to permit a jury to infer that the burner ceased to function properly because the Honeywell relay was defectively manufactured, it is by no

means so conclusive that the jury was compelled to draw such inference.

The court submitted the res ipsa loquitur doctrine to the jury. While there is some question as to its application here, we think the court's instruction was as favorable as plaintiff could desire. We see no need for discussing the highly technical facts involved. We are convinced that there was no abuse of discretion in the admission or rejection of expert opinions.

Affirmed.