## TAYAM v. EXECUTIVE AERO, INC., AND ANOTHER.
## JAN OLSON, SPECIAL ADMINISTRATRIX OF ESTATE OF ELISE E. LENIHAN, AND OTHERS v. SAME.

166 N. W. (2d) 584.

March 14, 1969—Nos. 41044, 41045.

*Meagher, Geer, Markham & Anderson, O. C. Adamson II,* and *Roderick D. Blanchard,* for appellant.

*Hvass, Weisman, King & Allen* and *Charles T. Hvass,* for respondent plaintiffs.

ROGOSHESKE, JUSTICE.

Judgments were entered for plaintiffs awarding them damages totaling $160,345 sustained as a result of an airplane crash which occurred on March 21, 1965, at about midnight, near Beloit, Wisconsin. The judgments, based upon jury verdicts, were against both defendants Mooney Aircraft, Inc., the manufacturer, and Executive Aero, Inc., the dealer-seller of the 1964 Mooney Super 21 single-engine, four-place airplane which crashed.

Following trial, defendant Executive Aero, Inc., moved for judgment notwithstanding the verdicts or for a new trial limited to the issue of liability. These appeals are from the orders denying the motions and from

50

the judgments. Defendant Mooney has not appealed and the judgments against it have become final.

The only questions presented are (1) whether the trial court erred in admitting opinion evidence as to the cause of the crash, and (2) whether the evidence sustains the jury finding of liability against defendant Executive Aero, Inc.[1]

In the early afternoon of March 21, plaintiff Robert M. Lenihan, the pilot, accompanied by his family, flew the airplane to Chicago to visit his parents. His return flight from O'Hare Field in Chicago commenced at 10:18 p. m. According to his filed flight plan, he intended to return to Minneapolis by flying over Janesville, Wisconsin; Lone Rock, Wisconsin; and Winona, Minnesota, at a cruising altitude of 4,500 feet and to land at Flying Cloud Airport near Minneapolis. During the taxi-out and takeoff from O'Hare Field, he encountered light snowfall despite information he had received that the weather was satisfactory for a visual return flight. His information contained no indication that he would encounter any snow. When he had reached a point about 80 miles northwest of Chicago, the quantity of snow appeared to increase. Realizing that he should not be flying in such weather, he radioed the Janesville airport and was informed that snow was being reported over the entire area. He requested an alternative route, and while waiting the advice of the radio operator, he received permission to climb to 10,500 feet. When he reached this altitude he was still encountering snow, and before the Janesville airport recontacted him, the engine of the airplane without warning stopped in flight, and all his efforts to restart it were unsuccessful. The crash which followed took the life of his wife and a twin stepdaughter, aged 10, and he, his young son, his infant daughter, and the other stepdaughter suffered personal injuries.

The owner of the airplane was plaintiff Tayam, a partnership consisting of four persons. The partnership included Louis Perlman and plaintiff Lenihan, who became a partner in October 1964. The airplane was purchased new from defendant Executive Aero in August 1964. It was

---

[1] The issue of liability in the trial of the action was governed by the law of Wisconsin, and no issue is raised on appeal with respect to the jury's special finding that plaintiff Robert M. Lenihan was not negligent in any degree.

powered by a four-cylinder, 200-horsepower, fuel-injection engine, thus eliminating the need for a carburetor. It was equipped with what is called a "ram air" or "power boost" system. As described by defendant manufacturer, this "unique" feature "provides increased manifold pressure to the engine when full throttle is used," thereby increasing the horsepower and efficiency of the engine. When activated by a control on the instrument panel which opens a door to the air intake located underneath the nose section of the fuselage, the power boost "by-passes the engine air filter and permits the engine to operate on direct ram air." Since "the engine will be operating on unfiltered air * * *, it should be operated only in clean, dust free air at altitude, and turned off for take-off and landing." Defendant manufacturer further explains and admonishes that the power boost is "effective only when the throttle is in the fully opened position," and "its advantages generally will be realized at altitudes above 5,000 feet where flight is often with full throttle," and that when flying in "icing conditions" the power boost should be turned off.

A review of the testimony makes clear that there is ample evidence to support the jury's finding that both defendant manufacturer and defendant seller negligently failed to communicate to plaintiff as an owner and pilot the danger — which the manufacturer expressly admitted at trial — that a "partial power loss and probably complete power loss can occur during icing conditions if the Power Boost is left on," and the fact that "icing conditions prevail any time the temperature and moisture conditions combine to produce the possibility of impact ice" which "may occur when flying through visible condensations even though there is no apparent ice formation on the aircraft surface." While it is true that this specific written warning issued by defendant manufacturer on March 20, 1965, was not, and could not have been, received by defendant seller prior to the crash, there is other evidence, which we deem unnecessary to detail, from which the jury could clearly find that plaintiff purchasers were unaware of the hazard and that defendant seller knew, or should have known, of it but failed to give adequate warning. Of course, such negligence would not render either the manufacturer or the seller liable

unless the crash of the airplane was caused by flying in a snowstorm with the power boost system left on.

Defendant seller argues that the only evidence supporting this claim was the opinion of a "non-expert" erroneously admitted over its objection. Louis Perlman, one of the owners of the airplane, as part of his extensive testimony was permitted to testify, in response to a lengthy hypothetical question, that in his opinion "the engine failure was caused by snow impacted on the air intake valve." He was the only claimed expert who testified at trial on this critical issue. Mr. Perlman is an insurance salesman holding no academic degree in the field of aeronautical engineering. Whatever special knowledge he possesses in this field was acquired through the medium of practical experience during the time he served in the Navy during World War II and as a civilian pilot. In brief, the evidence offered by plaintiff to qualify him as an expert was that he is licensed both as a private and commercial pilot with 1,300 hours of civilian flight time as a pilot and 6,000 hours flight time acquired during his military service, not, however, as a rated pilot. He attended naval schools, receiving training as an aviation machinist, and just prior to his discharge from the Navy he received mechanical schooling for 6 months, working with aircraft engines, carburetors, and ignition systems. At the time of trial he was well informed and familiar with all of the information issued by the manufacturer and the seller concerning the operation of the airplane in question, and with the danger of flying in icing conditions with the power boost on.

When a party calls a witness as a claimed expert to testify in the form of opinions or inferences based on facts or data made known to him at trial, a determination of the preliminary fact question of whether the witness possesses the necessary special knowledge, skill, experience, or training to be permitted to testify as an expert must be made by the trial court in the exercise of its discretion.[2] Although Professor Wigmore has urged that "the *trial Court must be left to determine*, absolutely and without review, the fact of possession of the required qualification by

---

[2] See, Annotation, 166 A. L. R. 1067; Uniform Rules of Evidence, Rule 56 (2); A. L. I., Model Code of Evidence, Rule 402.

a particular witness,"[3] in those cases where the admission or exclusion of the expert's opinion is claimed to have influenced the verdict, we have reviewed the trial court's finding. See, e. g., Teslow v. Minneapolis-Honeywell Regulator Co. 273 Minn. 309, 141 N. W. (2d) 507; Peters v. Peterson, 265 Minn. 131, 120 N. W. (2d) 846, 9 A. L. R. (3d) 1430; Murphy v. Hennen, 264 Minn. 457, 119 N. W. (2d) 489. We have held, however, that the trial judge's determination will not be disturbed on appeal unless it can be demonstrated either that there is absolutely no evidence that the witness possessed the requisite qualifications of an expert or that the court applied an erroneous legal standard, Woyak v. Konieske, 237 Minn. 213, 54 N. W. (2d) 649, 33 A. L. R. (2d) 1241; Koenigs v. Thome, 226 Minn. 14, 31 N. W. (2d) 534, and that in either case the error in admitting the expert's opinion substantially influenced the verdict returned to the prejudice of the objector. Murphy v. Hennen, *supra.*[4] In short, the admissibility of an expert's opinion is within the discretion of the trial court, and the ruling admitting or excluding the opinion will not be disturbed on appeal unless there is an abuse of discretion resulting in prejudice to the objector.

We are satisfied that the court applied the proper standard in ruling on defendant seller's objection since expert testimony as to the cause of a complete power failure and resulting airplane crash need not be limited only to the opinions of those holding aeronautical or engineering academic degrees. See, Bratt v. Western Air Lines, Inc. (10 Cir.) 155 F. (2d) 850, 166 A. L. R. 1061, certiorari denied, 329 U. S. 735, 67 S. Ct. 100, 91 L. ed. 635. While the absence of evidence showing that the witness had acquired special knowledge or experience concerning the causes of failure of a fuel-injection engine of the type which powered the airplane clearly would have justified the court in excluding his opinion, we cannot say that the record is devoid of any evidence that the witness possessed special knowledge sufficient to justify receiving the opinion he gave. Even if we were to accept defendant's argument that the witness was not properly qualified as an expert, we would not be warranted in

---

[3] 2 Wigmore, Evidence (3 ed.) § 561.

[4] See, Uniform Rules of Evidence, Rule 4(b); A. L. I., Model Code of Evidence, Rule 6(b).

reversing because we are persuaded that the opinion expressed had no substantial influence in bringing about the jury's finding as to the cause of the crash. The admissions of the manufacturer that a complete power loss can occur when flying in icing conditions if the power boost is left on coupled with the admissions of an officer of defendant seller that clogging of the power boost intake was probably the cause of the crash, and the fact that no other cause was advanced, much less suggested, by any other witness at the trial would alone provide sufficient evidentiary support for the jury's conclusion that the cause of the airplane crash was as plaintiffs claimed. The argument that the manufacturer did not expressly admit that flying in a snowstorm with the power boost on can cause a complete power loss does not impress us, for there is evidence from which the jury could reasonably infer that flying in a snowstorm was equivalent to flying in "icing conditions" where there was no apparent ice formation on the aircraft's surface.

Affirmed.