(No. 12791.—Reversed and remanded.)

THE CITY OF CHICAGO, Appellee, *vs.* AUGUST WITT *et al.* Appellants.

*Opinion filed October 27, 1919.*

1. EMINENT DOMAIN—*fair cash market value is correct measure of damages for land taken.* Where land is taken under the Eminent Domain act the correct measure of damages is the fair cash market value, and this value should always be given the owner as compensation.

2. SAME—*jury cannot ignore the evidence in fixing compensation and damages.* Where land is taken under the Eminent Domain act the jury cannot ignore all the evidence and fix the compensation and damages directly contrary thereto; and even though the evidence is conflicting, an assessment beyond the maximum or less than the minimum fixed by the testimony will not be sustained.

3. SAME—*in determining fair cash market value jury should consider the rental value.* The rental value of property taken by condemnation should be considered by the jury, along with other proper elements, in determining the fair cash market value, even though the improvements are old frame buildings and apparently rapidly depreciating in value.

APPEAL from the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding.

GEORGE S. FOSTER, and GEORGE W. WILBUR, for appellants.

WILLIAM A. BITHER, (FRANK D. AYERS, of counsel,) for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from a judgment of the circuit court in a proceeding brought by appellee, the city of Chicago, to condemn for school purposes certain lots at and near the corner of Kedzie avenue and George street, in the northwestern part of said city. Seven lots, with the improvements thereon, were involved in the said proceeding, being lots 18 to 24, inclusive, in block 1, Hall's subdivision of block 7, etc. Each of the lots is 123 feet deep and each is 25 feet wide, except lot 24, at the corner of Kedzie avenue and George street, which is 24 feet. Lot 24 has a two-story frame building on it, the first floor being occupied by a drug store, the second floor being used for living purposes. At the rear of said lot there is a small brick building used as a barber shop, and farther to the rear is a small frame building used as a shoe shop. The other lots are occupied by two-story frame buildings. The tenant of the drug store held a lease on the corner lot from 1916 to 1926 at $40 a month for the first three years, $50 for four years and $55 for the last three years. Apparently all the buildings on the other lots were leased at various rentals, running (except one for three years) from month to month or year to year.

It is contended that the jury's verdict in the condemnation proceeding was much too low as to the value of the property, and it is argued that it is clear from the evidence that the jury were misled as to the real values. Three witnesses testified for the board of education, with practical agreement, as to the ground values of the lots. One witness, a contractor, testified as to the value of the buildings. The jury brought in a verdict that the value of the property was $27,694, which is practically the value fixed by these witnesses for appellee. It is contended by counsel for

appellants that this verdict is $3.29 less than the minimum value testified to by appellee's own witnesses, and that the jury also deducted $440 as the value of the leasehold interest of the druggist in lot 24. Counsel for appellee insist that the jury's verdict was $84.71 more than the value testified to by the witnesses for the board of education.

There was some testimony from witnesses as to the prices received for some of the vacant property within a short distance of the property here under consideration. Three witnesses testified for appellants as to the land values, two others as to the value of the improvements, and two others as to the combined values of lots and improvements. The testimony of all these witnesses for appellants as to the values is much higher than the values found by the jury. The lowest valuation given by any of these witnesses was $34,500 and the highest $72,300, the average valuation by these witnesses being approximately $50,000. The witnesses for appellants took into consideration, in fixing the values, the rents received from the buildings, while it appears that the witnesses for the appellee did not consider the question of rents as material. The evidence shows that, taking the entire rental value of the property, less expenditures, including repairs, taxes, insurance, etc., and capitalizing it at five per cent, would give the value of the property at from three to four times the value found by the jury. It is manifest from the verdict that the jury gave more weight to the testimony of appellee's witnesses than to that for appellants and that they did not seriously consider the rents in reaching their verdict. The three witnesses who testified for the petitioner as to land values were not, in the strict sense of the term, experts. They had had large experience in the real estate business in Chicago, but had very little, if any, special knowledge of the value of property in the particular locality in which this property is situated. They went to the locality, observed appearances and surroundings and testified as to the value.

The witnesses who testified for appellants were much more familiar with the property in that locality and had had a large experience in real estate transactions in that vicinity. What was said by this court in *City of Chicago* v. *Lehmann,* 262 Ill. 468, as to the comparative weight of the testimony on behalf of petitioner and the property owners applies with like force in this case. These lands were to be taken under the Eminent Domain law, and the correct measure of damages is their fair cash market value. This value should always be given the owner as just compensation for the property taken. In reaching this value it was proper for the jury to take into consideration what the property was renting for. (2 Nichols on Eminent Domain,—2d ed.— sec. 442; *City of Chicago* v. *Lord,* 276 Ill. 357, and id. 544.) The jury may not ignore all the evidence and fix the compensation and damages directly contrary thereto. It is only where the evidence is conflicting that the jury may draw their own conclusions from a personal view. Even then, an assessment beyond the maximum or less than the minimum fixed by the testimony will not be sustained. (*Atchison, Topeka and Santa Fe Railroad Co.* v. *Schneider,* 127 Ill. 144.) If the $440 value of leasehold interest be figured in, the jury in this case fixed the value at less than the valuation given by the testimony of appellee's own witnesses and were apparently not influenced in any way by the testimony of appellants and did not seem to take into consideration the uncontradicted testimony as to the rental values. Whether the verdict was $3.29 below the values given by the witnesses for appellee or $84.71 more does not lessen the force of the argument of appellants' counsel that the jury followed the testimony of appellee's witnesses and practically ignored that of appellants.

Counsel for appellants insist that the court erred in refusing to give instruction 18 asked on their behalf. That instruction stated to the jury that they had a right, in fixing the fair cash value of the property, to consider the net

rental returns derived from each piece of property at the time the petition for condemnation was filed, and also stated how such net annual returns should be ascertained. Appellants, without question, had a right to have the jury instructed along this line. While this instruction is not aptly worded, it is not pointed out by counsel for appellee how it would tend to mislead the jury or that it was incorrect in any manner. None of the instructions given covered or attempted to cover the ground covered by this instruction. In view of this record we think the court erred in failing to give it. The rental value of the property was certainly an important question to be considered by the jury in reaching the fair cash market value of the property, and while the improvements were old frame buildings and apparently were rapidly depreciating in value, that would furnish no reason why the rental value of the property should not be taken into consideration, along with all the proper elements to be considered in reaching the fair cash market value of the property. *Harrigan* v. *Boston Elevated Railway Co.* 190 Mass. 577; 2 Nichols on Eminent Domain, (2d ed.) sec. 446.

The testimony of the witnesses was so widely variant that in view of the verdict in this case and all the facts found in the record the failure to give an instruction as to the rents may have had a very large influence as to the verdict reached. We think this cause should be submitted to another jury for its consideration as to the value of the property.

The judgment of the circuit court will therefore be reversed and the cause remanded.

*Reversed and remanded.*