REGENTS OF THE UNIVERSITY OF MINNESOTA
v. DAVID S. IRWIN AND OTHERS.
LIDA A. SMITH AND OTHERS, APPELLANTS.[1]

March 27, 1953.

No. 35,644.

*Chapman & Chapman,* for appellants.

*J. A. A. Burnquist,* Attorney General, *Joseph J. Bright,* Assistant Attorney General, for respondent.

FRANK T. GALLAGHER, JUSTICE.

The opinion filed November 21, 1952, is hereby withdrawn, and the following opinion filed in lieu thereof.

---

[1]Reported in 57 N. W. (2d) 625.

Appeal from an order of the district court denying appellants' motion for a new trial.

The material facts are briefly as follows: The regents of the University of Minnesota, referred to hereinafter as the regents, instituted condemnation proceedings to acquire certain real estate described in the pleadings. Appraisers were appointed, and an award of $23,500 was made to appellants, referred to hereinafter as the owners. The regents appealed from the award, and the matter was tried in the district court of Hennepin county. The jury returned a verdict of $15,000 in favor of the owners, who moved for a new trial. The motion was denied, and this appeal was taken from the order.

The only questions raised by the owners on appeal are:

(1) Did the trial court err in refusing to admit evidence pertaining to the rental value of the individual rooms of the premises involved?

(2) Did the trial court err in allowing evidence of salvage and investment value to be submitted?

The property, situated at 519 Washington avenue southeast in Minneapolis, was purchased about 1919 by the deceased husband of Lida A. Smith, one of the owners. The premises consist of the following: A site 38 feet wide and 132 feet in depth fronting on Washington avenue, without an alley to the rear but with a right-of-way easement across the adjoining property; a stucco and metal lath house built about 1910, 24 feet wide and 34 feet in depth, consisting of a dining room, kitchen, living room, one bedroom, and a porch or sun parlor on the first floor, four bedrooms and a sleeping porch on the second floor, and a small three-room apartment on the third floor, which can only be reached from the inside. There is a full basement under the house with a hot-water heating plant and stoker located therein. Also located in the basement is an air-conditioning unit which serves the third floor. To the rear of the property is a two-car garage. The record shows that the house is basically sound but that it is in need of repairs. It further appears

that the house located on the premises has been partially used as a rooming house; that three of the owners of the premises, Lida A. Smith and her two sons, Chester and Kenneth, occupied the first and third stories of the house as their home; that Kenneth operated a sewer-cleaning business from the premises, with a telephone in connection therewith; and that he manufactured some sewer caps in the basement. The property is within a block of the university medical school and is also near the academic campus in a commercial-zone neighborhood and in a district classified more or less as a rooming-house area. It also appears from the record that during the 32 years that the Smiths owned and occupied the premises they had few, if any, vacancies in the rooms which they had for rent, except for the normal period of time which it took for one tenant to move out and another to move in; that the highest beneficial use to which the property could be put was that of a rooming house occupied by the owners and operators; and that the property was peculiarly adapted for that purpose because of its close proximity to the university campus.

■ It is the position of the regents that there was no error on the part of the trial court in excluding evidence of the gross income from the rental of the rooms. They point out that, pursuant to a stipulation between the parties, one witness testified for the owners that the customary process of renting rooms on the university campus consisted of the owner of the property renting out a furnished room and furnishing the linens, beds, and personal property necessary to make up a sleeping room, together with heat and electricity, use of telephone, and such labor and other personal services required to keep the room in a livable and clean condition. When this witness was asked to express his opinion as to the rental value of each of the rooms as of January 20, 1951, the date of the award of the commissioners, the question was objected to and the objection was sustained by the court. The owners then made an offer of proof to the effect that if the witness had been allowed to testify the testimony would have been that the rental value of the second and third floors of the condemned premises was $230 a

month. It is the contention of the regents that the question before the jury was not what the second and third floors, or any of the rooms of the condemned premises, were worth on the market, but rather what price a buyer would be willing to pay for the entire property. They conclude that it was therefore not error for the court to sustain an objection to the question which they claim related to only a part of the condemned premises.

We cannot agree with the reasoning of the regents in the case at bar. The premises are located along Washington avenue, close to the university medical school and to the campus in general, and the record shows that during the 32 years that the owners used and occupied the premises they had few, if any, vacancies in the rooms. It seems to us that because of the apparent demand for rental space in that particular location the rentals received from the rooms available for rental purposes, with other elements, would necessarily affect values placed on the entire property and would be considered by prospective purchasers in estimating the market value of the premises. For that reason, it is our opinion that the jury should have been given the benefit of such information, together with other facts concerning the property, to aid it in arriving at the market value. It seems to us that the income received in good faith from the ordinary use of the rooms, within a reasonable limit of time, clearly is a fact which would contribute in arriving at a fair market value, provided, of course, that anything fanciful or fictitious was excluded. Kelchner v. City of Kansas City, 86 Kan. 762, 121 P. 915.

In an attempt to get at the general policy of this court in admitting evidence of market value in questions of condemnation, Mr. Justice Mitchell said in King v. Minneapolis Union Ry. Co. 32 Minn. 224, 226, 20 N. W. 135, 136:

"* * * It is, we think, equally true that any evidence is competent and any fact is proper to be considered which legitimately bears upon the question of the marketable value of the property. * * * When we speak of the market value of property as being what purchasers generally would pay for it, we do not mean what

men would pay who had no particular object in view in purchasing, and no definite plan as to the use to which to put it. The owner has a right to its value for the use for which it would bring the most in the market."

In considering the question of rental value in determining the fair market value of property, the supreme court of Illinois, in City of Chicago v. Witt, 289 Ill. 520, 524, 124 N. E. 638, 640, said:

"* * * The rental value of the property was certainly an important question to be considered by the jury in reaching the fair cash market value of the property, and while the improvements were old frame buildings and apparently were rapidly depreciating in value, that would furnish no reason why the rental value of the property should not be taken into consideration, along with all the proper elements to be considered in reaching the fair cash market value of the property."

It seems reasonable to us, therefore, that in condemnation proceedings involving property having a rental value the income or rent from the property, even though part of the property was occupied as a residence by the owners, would be competent evidence to be considered in determining the market value. For example, we can visualize a possibility where there might be two properties, similar to the one involved, situated in different parts of the city of Minneapolis with different environments. Even though two buildings might be the same as far as material, structure, and size were concerned it would not be sound to say that one property, located near an institution like the University of Minnesota, with rooms available for rental purposes to students and others, was not more desirable for income purposes than a similar house located at the outskirts of the city, far from any such environment. In determining the value of these respective properties, particularly where income was being considered, it seems to us that both the buyer and the seller would consider these facts and the income derived from each property in determining the market value.

We are, of course, confronted with the general rule that evidence of profits derived from a business conducted on a property is not admissible as evidence bearing on market value of condemned property. Annotation, 7 A. L. R. 164. However, we do not feel that that rule is in conflict here. After a careful examination of the cases which adhere to the rule of the inadmissibility of profits as evidence, it is clear that the reason for prohibiting the introduction of this evidence is that profits are many times too speculative and are dependent upon many and varying circumstances, such as the nature of the season, price of labor, condition of the markets as to supply and demand, and other things. We do not seem to have that situation in the case at bar. As stated, the testimony is that the rooms involved were rented almost continuously during the years the present owners occupied the premises. While it is true that the amounts received from rental of the rooms might vary over a period of 32 years because of fluctuating rental rates, it is also apparent that the receipts for rentals were not subject to the same uncertainties because of the nature of the season, condition of the market, and so on as would exist in such commercial lines as the operation of a store or other merchandising business. It is therefore our conclusion that evidence of rental value of the property was a proper subject to be introduced in determining market value. Orgel, Valuation Under Eminent Domain, p. 562, note 2, and § 178; Housing Authority of New Orleans v. Persson, 203 La. 255, 13 So. (2d) 853; Kelchner v. City of Kansas City, 86 Kan. 762, 121 P. 915; Levenson v. Boston Elevated Ry. Co. 191 Mass. 75, 77 N. E. 635; Ogden L. & I. Ry. Co. v. Jones, 51 Utah 62,168 P. 548; Pumphrey v. State Roads Comm. 175 Md. 498, 2 A. (2d) 668; Welch v. Tennessee Valley Authority (6 Cir.) 108 F. (2d) 95; City of Chicago v. Koff, 341 Ill. 520, 173 N. E. 666; Matter of City of New York re Blackwell's Island Bridge, 118 App. Div. 272, 103 N. Y. S. 441; Demetria Sifuentes v. United States (1 Cir.) 168 F. (2d) 264; United States v. Shingle (9 Cir.) 91 F. (2d) 85; 5 Nichols, Eminent Domain (3 ed.) § 19.1[1]. The rental value of furnished premises may be considered

in determining reasonable market value, provided a proper deduction for the value of the furnishings is taken into consideration.

We cannot agree with the second question raised by the owners that the court erred in admitting evidence as to the salvage and investment value of the house and property in question. We do not think that this objection is well founded, inasmuch as the owners first introduced testimony tending to show that the property could be used for apartment-house purposes. The regents introduced testimony dealing with salvage and investment values for the purpose of showing that this was impracticable, and therefore not one of the uses to which this property could be put, and they were within their legal rights in so doing.

Reversed and new trial granted.

MR. JUSTICE ROGER L. DELL, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.