## HOUSING AND REDEVELOPMENT AUTHORITY OF CITY OF ST. PAUL v. KIEFFER BROTHERS INVESTMENT AND CONSTRUCTION COMPANY AND OTHERS.

170 N. W. (2d) 862.

September 19, 1969—No. 41361.

*James T. Hart, William J. Young,* and *John F. Bannigan, Jr.,* for appellant.

*Firestone, Fink, Krawetz, Miley, Maas & Noonan,* for respondent.

Heard before Knutson, C. J., and Murphy, Rogosheske, Sheran, and Peterson, JJ.

MURPHY, JUSTICE.

Appeal from an order of the district court denying the motion of petitioner, Housing and Redevelopment Authority of the City

of St. Paul, for a new trial in a proceeding initiated by the Authority to condemn real estate of Kieffer Brothers Investment and Construction Company for inclusion in an urban renewal project. The commissioners appointed by the court placed a gross valuation of $375,000 upon the property. In appeals from the commissioners' award, the Authority alleged that the fair market value of the property was $236,000 and the owners contended that its fair market value was $540,000. After trial, the jury determined the value to be $381,500. Petitioner contends here that it was prejudiced by certain rulings of the trial court sustaining objections to evidence which it sought to introduce at trial.

It appears from the evidence that the subject property is an 8-year-old parking ramp of steel and concrete construction. It is located in the downtown business district of the city of St. Paul. The property owners' case rested upon evidence relating to the condition of the property and its reasonable market value. A real estate appraiser expressed the opinion that the fair market value of the property on the date of taking, less cost of repairs, was $430,000.

In an attempt to establish that the award of the commissioners was excessive, the Authority called several witnesses who were expert in the area of structural engineering. Their approach to proof of reasonable market value was to attempt to establish reproduction cost less allowance for depreciation. The Authority's first witness, Norman E. Henning, qualified as a materials testing expert. He had made an extensive examination of the structure and testified at length as to the quality and condition of the physical structure, with particular reference to steel beams and columns, defects which appeared from cracks, and the spalled and rusted condition of the floor covering. He took core samples of parts of the structure to determine the quality of the material and its fitness to withstand the wear and tear of use and exposure to the elements. The trial court sustained an objection concerning his qualifications to give an opinion as to how long the structure could be used in its then con-

dition. This question, however, was later answered by the Authority's next witness, Alfred H. Schroeder, a registered civil engineer, who spent 476 hours in preparing himself to testify. He took measurements of the building, directed the removal of cores and slabs for use of the testing engineer, and prepared drawings of the entire ramp. He observed the extent of rust and scaling, and suggested repairs and renewals which might extend the life of the structure. He concluded that the grade of the ramp was too steep, that there were irregular areas in the concrete, and that drainage on the surfaces might be improved by treatment. He expressed the opinion that the life of the structure in its then condition would be from 3 to 5 years.

It appears that the testimony of Schroeder was designed to provide a foundation for the opinion of one Emil E. Walsh, a construction engineer.[1] On the basis of Schroeder's testimony as to the condition of the building, Walsh was asked to make an estimate of the cost to reproduce it, as well as to make an analysis of the cost of repair. The trial court sustained an objection to his testimony as to the cost of repair on the ground of lack of foundation. The trial court was of the view that Walsh was a general contractor qualified to build structures according to plans and specifications but not qualified to solve problems uniquely related to the field of engineering. From the offer of proof, it would appear that the Authority proposed to establish through Walsh's testimony that the market value of the property was $243,909 on the basis of replacement cost less curative repairs.

---

[1] In commenting on the evidence given by the witness Schroeder, the trial court, in a memorandum accompanying its order denying a new trial, noted, "* * * Certainly one of the primary purposes of the examination was to prepare himself to testify as an expert witness on behalf of Petitioner. Yet, he testifed that he had made no measurements of the claimed areas of scaling or spalling, he had no field notes, either written or on tape, there was no specificity as to the area of slabs which needed replacement; and, all in all, the testimony as given was generally unspecific and indecisive."

The Authority was similarly frustrated in its attempt to secure opinions as to reasonable market value from two real estate appraisers who also sought to approach the question of reasonable market value on the basis of life expectancy of the building and the cost of remedying structural defects. The trial court was of the view that preliminary foundation for opinion evidence on this basis was deficient.

The trial court limited cross-examination by the Authority of witness Richard Parranto, a commissioner who was called in behalf of the owner. His testimony was admissible pursuant to Minn. St. 117.20, subd. 8(c), which provides in part:

"* * * A commissioner in a condemnation proceeding may be called by any party as a witness to testify as to the amount of the award of the commissioners."

The Authority sought to establish by this cross-examination that, on the basis of testimony before the commissioners, their determination of value was based upon factors different from those presented to the jury for their consideration. In doing so, the Authority sought to go into specific testimony heard by the commissioners. While the trial court agreed that a witness may be impeached with prior contradictory testimony, he did not feel that the Authority should be permitted by cross-examination to place before the jury evidence of testimony given by other witnesses at the commissioners' hearings. (In view of the extended trial, exemplified by the 1,324-page transcript before us, we can well appreciate the trial court's reluctance to permit the Authority to repeat the entire proceedings before the commissioners.)

■ In considering the asserted claims of error, it is necessary to keep in mind the criteria ordinarily used in determining a landowner's damage for property taken by eminent domain. These standards are expressed in Minneapolis-St. Paul Sanitary Dist. v. Fitzpatrick, 201 Minn. 442, 277 N. W. 394, 124 A. L. R. 897. It is well recognized that the fair market value which an owner is entitled to receive for his property in a condemnation

proceeding is the amount of money which a purchaser, willing but not obliged to buy, would pay to an owner, willing but not obliged to sell. State, by Mattson, v. Schoberg, 279 Minn. 145, 151, 155 N. W. (2d) 750, 754; 4 Nichols, Eminent Domain (Rev. 3 ed.) § 12.2(1).

■ It is well established that the value of land taken by eminent domain is always a matter of opinion which may be proved by opinion evidence. While the opinions of experts are not blindly followed, they are to be weighed by the jury and judged in view of all the testimony in the case and the jury's own knowledge of affairs, and are to be given only such consideration as the jury may believe them entitled to receive. 6 Dunnell, Dig. (3 ed.) § 3112; 7 Dunnell, Dig. (3 ed.) § 3334; 27 Am. Jur. (2d) Eminent Domain, § 425; 29 Am. Jur. (2d) Evidence, § 394. The owner is entitled to the fair market value of the property for any use to which it is adapted and for which it is available and may be sold. State v. Robinson, 266 Minn. 166, 123 N. W. (2d) 812.

■ In determining whether or not the trial court abused its discretion as asserted by petitioner here, it must be kept in mind that the admissibility of an expert's opinion is ordinarily within the discretion of the trial court, and a ruling admitting or excluding such opinion evidence will not be disturbed on appeal unless there is an abuse of discretion resulting in prejudice to the objector. Tayam v. Executive Aero, Inc. 283 Minn. 48, 166 N. W. (2d) 584. This rule applies as well to the sufficiency of a foundation for the opinion of an expert. Lovejoy v. Minneapolis-Moline Power Imp. Co. 248 Minn. 319, 79 N. W. (2d) 688; Berg v. Ullevig, 244 Minn. 390, 70 N. W. (2d) 133; Woyak v. Konieske, 237 Minn. 213, 54 N. W. (2d) 649, 33 A. L. R. (2d) 1241.

■ It does not appear that the trial court's rulings were intended to deprive the Authority of the benefit of opinion evidence as to the reasonable market value of the property. The rulings of the trial court resulted from deficiency in foundation for opinion evidence as to market value based upon cost of reproduc-

tion less cost of repairs. In a helpful memorandum, the trial court observed:

"Admittedly, these are often difficult cases for both Petitioner and Respondent; and, while a certain amount of liberality should be shown as to matters of proof, where, as here, a government agency has taken property, destroyed a going business, and then claimed that an eight year old steel and concrete structure (which, to all intents and purposes, has been regularly certified as safe by the municipal Authorities) was rapidly disintegrating and was in imminent danger of collapse, it is not unreasonable that the taking authority should be held to at least minimal standards of proof."

As we view the record, the Authority was permitted great latitude in presenting its evidence bearing upon value factors. It does not seem to us that the issues were as complicated as counsel would make them appear, and we can well understand the court's reaction to methods of proof which required 3 weeks of trial, much of which was used in demonstrating the Authority's elaborate, technical investigation of the property. The jury was thoroughly familiar with the kind of property which was being taken by the Authority. If the Authority did not succeed in providing the jury with expert opinion as to reasonable market value in terms of dollars, it was not because of any abuse of discretion on the part of the trial court.

Affirmed.