**STATE of Minnesota, by Warren SPAN-NAUS, its Attorney General,
Petitioner Below,**

**v.**

**BELMONT, HOLMBERG, et al.,
Respondents Below,**

**John L. JOHNSON and Irma P. Johnson, Appellants,**

**v.**

**Louis P. GILBERT and Ann Marie Gilbert and Robert Hall,
Respondents.**

**No. C4-85-1526.**

Court of Appeals of Minnesota.

March 25, 1986.

Review Denied May 29, 1986.

John M. LeFevre, Jr., Mary G. Dobbins, Minneapolis, for appellants.

John F. Bannigan, Jr., St. Paul, for respondents.

Heard, considered and decided by POPOVICH, C.J., WOZNIAK and SEDGWICK, JJ.

## OPINION

SEDGWICK, Judge.

This is an eminent domain proceeding involving the acquisition of a portion of Parcel 34C, the premises of a bowling alley/bar/restaurant known as "Capt'n Jack's," located in Woodbury. In 1982 the State filed a petition seeking to acquire the property pursuant to Minn.Stat. § 117.042 (1984), the "quick-take" statute.

All parties appealed from the commissioners' award. The State subsequently reached a stipulated settlement with the Johnsons (tenants) and Gilbert and Hall (owners) for a total sum of $1,150,000 as compensation for the damages caused by the taking of parcel 34C, with allocation of that amount to be tried.

Following trial of the allocation issue, the court awarded Johnsons $312,854 and Gilbert $837,146. The Johnsons moved for amended findings or new trial. The court denied appellants' motions but amended its findings to correct certain calculation errors. Johnsons appealed. We affirm.

## FACTS

Appellants John and Irma Johnson were the proprietors of Capt'n Jack's, a bowling alley/bar/restaurant in Woodbury. In 1973, the Johnsons took possession of Parcel 34C under a 20 year lease, with Louis and Ann Marie Gilbert and Robert Hall as lessors. The lease provided for a base rent of $3,750 per month ($42,840 annually), and also provided for additional rent in an amount equal to 4% of the liquor sales. There was no clause relating to condemnation in the lease.

Before execution of the lease, John Johnson asked Louis Gilbert, a general contractor doing business as Gilbert Construction Co. Inc., to build a 16-lane bowling facility for him in the City of Lake Elmo. Instead, Gilbert helped Johnson find a site in Woodbury. Johnson, however, was not able to buy this land (Parcel 34C) unless Gilbert guaranteed the contract. When Johnson defaulted on the contract, the Gilberts became the owners.

The Johnsons were also unable to find financing for their bowling alley. Gilbert agreed to build and lease back a 24-lane bowling alley, bar, and restaurant, on the condition that Robert Hall, an experienced operator, join the venture.

Based upon these conditions, the Johnsons and Gilbert and Hall entered into the 20 year lease.

After execution of the lease, Gilbert's company constructed a building on the property. The Johnsons added all of the improvements necessary for the business, including bowling alley/bar/restaurant fixtures and equipment.

When the bowling alley was built, there was an optimistic growth pattern predicted for the Woodbury area. This growth did not materialize. A major retail company abandoned plans to move into the area, which diminished projected growth. In addition, the introduction of five new competing bowling facilities in the 30-mile radius, and uncertainty as to the location of Interstate 94 prevented expected growth, affecting the lessees' business.

The State acquired title to 33,132 of the 123,721 square feet of land occupied by the Johnsons for use as a permanent right of way in the upgrading of Trunk Highway 12. This acquisition deprived the property of its entire sewage disposal system. The taking of part of parcel 34C, along with parts of 34D and 34E which had been used

as parking for Capt'n Jack's, eliminated proper parking for the business.

Before July 1982, the highest and best use of parcel 34C was as a bowling alley, restaurant and bar. After the taking, the highest and best use was changed to a less intense use. The change in use will require substantial gutting and reconstructing of the building located on parcel 34C.

In July 1984, the Johnsons delivered physical possession to Gilbert and Hall. The court allocated $312,854 to the Johnsons and $837,146 to the lessors. The court held that the value of the Johnsons' fixtures as of the date of the taking (less mitigation) was $312,854. The trial court also found that the Johnsons had no leasehold advantage as of the date of the taking.

The Johnsons appeal from that determination as well as the allocation of the settlement. They do not contest the remainder of the trial court's findings.

## ISSUE

Does the evidence support the trial court's determination on leasehold value and allocation of the damages between lessors and lessees?

## ANALYSIS

■ Where property is taken under eminent domain, the reimbursement amount is the fair market value of the property taken. If the property taken is a leasehold, the amount to be paid is the fair rental value of the premises less the amount of the rent for the remainder of the term. *In re Assessment for Widening Third St. in St. Paul,* 176 Minn. 389, 223 N.W. 458 (1929); *Kafka v. Davidson,* 135 Minn. 389, 160 N.W. 1021 (1917).

The measure of damages upon condemnation of a leasehold is the fair market value of the estate taken. *State v. Robinson,* 266 Minn. 166, 175, 123 N.W.2d 812, 819 (1963) (citation omitted).

■ The award should be for the market value of the land and building as an entire property, subject to apportionment between the landlord and tenant according to their respective interests. *Minneapolis-St. Paul Metropolitan Airports Commission v. Hedberg-Freidheim Co.,* 226 Minn. 282, 287, 32 N.W.2d 569, 572 (1948).

■ The trial court did not believe the testimony of appellants' experts. This credibility determination was justified. One of the appellants' experts testified that he had very little lease and rental data on bowling alleys when he appraised the economic rent of Capt'n Jack's. It appears that his $5.00 per square foot appraisal was largely based upon another appraiser's opinion of the economic rental value.

Appellants' second expert performed a before and after appraisal of the land and buildings only. He admitted that he could not break out the value of the leasehold estate or fixtures. He also admitted that there was little comparative rental data available publicly on bowling alleys. Moreover, there were few current transactions for the comparative analysis.

We will not disturb findings of the trial court unless they are clearly erroneous, either without substantial evidentiary support or induced by an erroneous view of the law. *Reserve Mining Co. v. State,* 310 N.W.2d 487, 490 (Minn.1981) (citation omitted); *see Bohm v. Independent School Dist. No. 283, St. Louis Park,* 358 N.W.2d 146 (Minn.Ct.App.1984).

Here, the trial court believed the testimony of one of respondents' witnesses that there was no leasehold advantage. Unless this was not supported by the evidence, or was clearly erroneous or induced by error of law, this finding should not be overturned.

Respondents' expert testified that the rental cost should decrease over time compared to total sales in order that the tenants achieve a reasonable rate of return. Since the Johnsons' lease was old, the percentage of rent as part of operations

should have been decreasing. Actually, the percentage the Johnsons paid for rent increased over time. Therefore, the fixed base rent was a disadvantage. Respondents' expert therefore valued the unexpired portion of the leasehold as only worth the value of the hard assets of the business.

The trial court relied upon this testimony to decide that there was no leasehold advantage (i.e., that the leasehold had not appreciated since 1973). The court concluded that a reasonable buyer would not pay extra for a lease the cost of which exceeded acceptable industry standards. Therefore, the court only awarded the Johnsons the value of their fixtures.

Given the declining business climate recognized by both of appellants' experts, there was adequate evidence to support the trial court's conclusion that there was no leasehold advantage.

■ There were certain problems with the evidence presented to the trial court. Both appellants' and respondents' experts relied to some extent upon profit figures and financial statements from Capt'n Jack's to determine the market value of the leasehold. Generally, evidence of profits derived from a business conducted on a property is not admissible as evidence bearing on market value of condemned property. *Regents of the University of Minnesota v. Irwin*, 239 Minn. 42, 47, 57 N.W.2d 625, 627–28 (1953).

■ However, the estate holders have the burden of proving their damages in eminent domain cases. *See Minneapolis-St. Paul Sanitary District v. Fitzpatrick*, 201 Minn. 442, 460, 277 N.W. 394, 403 (1937). Since no better evidence was presented by either party, the trial court made the best evaluation possible with the evidence before it.

## DECISION

We affirm the decision of the trial court.