STATE of Minnesota,
Petitioner, Appellant,

v.

WEBER–CONNELLY, NAEGELE, INC., et al., Respondents.

No. C4–89–1082.

Court of Appeals of Minnesota.

Dec. 5, 1989.

Hubert H. Humphrey, III, Atty. Gen., Sherry A. Enzler, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Richard T. Ince, Ince & Liszt, Minneapolis, for respondents.

Heard, considered, and decided by SCHUMACHER, P.J., and GARDEBRING and LESLIE *, JJ.

## OPINION

GARDEBRING, Judge.

Appellant challenges the trial court's award of just compensation for the taking of 13 outdoor advertising structures pursuant to the Minnesota Outdoor Advertising Control Act, Minn.Stat. ch. 173 (1988). Appellant contends that the trial court erred in awarding compensation for lost rental

* Acting as Judge of the Court of Appeals by appointment pursuant to Minn.Const. art. 6,

income using a gross rent or gross annual multiplier. Appellant maintains that the method of valuation dictated by the common law of eminent domain is the cost approach. We affirm.

## FACTS

In 1965, Congress passed the Federal Highway Beautification Act which authorized the taking of certain outdoor advertising structures. Congress determined that just compensation should be paid for:

(A) The taking from the owner of such sign, display, or device of all right, title, leasehold, and interest in such sign, display or device.

23 U.S.C. § 131(g)(A) (1988).

In compliance with the federal act, the Minnesota Legislature passed substantive amendments to Minnesota's Outdoor Advertising Control Act. The legislature authorized payment of just compensation in language identical to the federal act for those advertising devices in lawful existence on June 8, 1971. Minn.Stat. § 173.17 (1988).

Before June 8, 1971, respondent Naegele lawfully erected 13 billboard structures displaying 23 faces in 10 different leased locations in Dakota County. Each lease stated that the lessee shall have the right to erect and maintain the structures and post or paint advertisements on the structures. The structures would always remain the personal property of the lessee.

On February 8, 1979, appellant petitioned for condemnation of the 13 outdoor advertising structures. By court order dated April 12, 1979, appellant's petition was granted. The court found that the taking was necessary for a public purpose and appointed three commissioners to assess damages. No appeal was taken from this determination.

After viewing the premises and hearing testimony from two appraisers, the commissioners calculated the fair market value of the billboards to be $95,625, using the cost approach to valuation. They filed the award on May 21, 1987, which the parties

§ 2.

agree is the date of taking. Both appellant and respondent appealed the commissioners' award.

The de novo court trial commenced on December 20, 1988. The court heard testimony from numerous expert witnesses. Respondent's real estate director testified that zoning has substantially diminished the available locations, and therefore the structures taken here cannot be relocated in Dakota County. Because of this taking, respondent's coverage in Dakota County has been reduced by 25%. By using the market approach to valuation, he valued the advertising structures at $384,500.

Respondent's appraiser used three different approaches in valuing the advertising structures: the cost approach—$345,140; the income approach—$321,800; and the market approach—$331,000. He testified that all these approaches were valid measures of value and each approach acted as a cross check over the validity of the others.

A right-of-way officer for the Federal Highway Administration testified that while the Federal Highway Administration had declined to accept the state's proposal for use of a gross rental multiplier in 1973 and recommended development of an acceptable cost schedule, it did not completely rule out use of a multiplier.

Appellant's appraiser testified that the cost value of the billboards was $85,250. He acknowledged that he assumed relocation of the structures in his assessment and that if the structures could not be relocated, "there is a case to be made for business loss of going concern or business income."

On February 15, 1989, the trial court filed its decision. The court found that respondent had the right to erect, maintain, rent or use, and sell its structures. The court found that because of the state's action, respondent lost rental income. It also found that the billboards could not "be replaced in any meaningful way within the same market area, namely, Dakota County."

The court then concluded that the gross rent multiplier (or market) approach was more relevant to just compensation than the cost approach. The court noted that rent from billboards was much closer to the type of income generated by the property itself rather than income generated by a business or service. Judgment for $256,-263 was entered on March 20, 1989.

## ISSUES

1. Did the trial court err in interpreting Minn.Stat. § 173.17 (1988) to require compensation for lost rental income?

2. Does the evidence support the trial court's determination that income from billboards is rental income rather than business profits?

3. Did the trial court err in using the gross rent multiplier approach rather than the cost approach to valuation?

## ANALYSIS

Generally, the only question to be reviewed on appeal from a judgment is whether the decision is reasonably supported by the evidence. *State v. Bradac*, 257 Minn. 467, 469, 102 N.W.2d 34, 36 (1960). The appellate court will not disturb findings of the trial court unless they are clearly erroneous, "either without substantial evidentiary support or induced by an erroneous view of the law." *State v. Belmont, Holmberg*, 384 N.W.2d 214, 216 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. May 29, 1986). It is not for the reviewing court to substitute its own judgment for that of the trial court's resolution of the fair market value of property in condemnation proceedings. *See Independent School District No. 13 v. Minneapolis Electric Steel Castings Co.*, 298 Minn. 534, 536, 214 N.W.2d 469, 470 (1974).

### I. Statutory Interpretation

■ Appellant first claims that the trial court erred in interpreting Minn.Stat. § 173.17 to require compensation for lost rental income.

Minn.Const. art. 1, § 13 provides:
Private property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid or secured.

The measure of just compensation is the fair market value of the property taken. *Belmont, Holmberg,* 384 N.W.2d at 216. The market value is the price a willing buyer would pay to a willing seller. *See Housing & Redevelopment Authority v. Kieffer Brothers Investment & Construction Co.,* 284 Minn. 516, 520–21, 170 N.W.2d 862, 864 (1969).

Minnesota Statutes Chapter 117 (1988) provides procedures for exercising the right of eminent domain. When a leasehold is condemned, the courts have found that personal property which is to be removed upon termination of a lease is not a compensable interest under Chapter 117. *See State v. Pahl,* 257 Minn. 177, 182, 100 N.W.2d 724, 728 (1960). Ordinarily, under Chapter 117, courts have not allowed compensation for outdoor advertising structures which the evidence establishes to be personal property. *See In re Condemnation by the Minneapolis Community Development Agency,* 417 N.W.2d 127, 130 (Minn.Ct.App.1987), *pet for rev. denied* (Minn. Feb. 24, 1988); *State v. Kouri,* 415 N.W.2d 412, 413 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Jan. 28, 1988).

However, Minn.Stat. ch. 173 (1988) provides a special mechanism, separate from the general purpose and procedure of Chapter 117, directed specifically to the taking of billboards for the purpose of conserving the natural beauty of areas adjacent to certain highways in the state. By statute, the state is obligated to compensate for certain property rights which might not otherwise be compensable under Chapter 117. Chapter 173 provides that just compensation be paid for:

(1) The taking from the owner of such sign, display or device of *all right, title, leasehold and interest* in such sign, display or device.

Minn.Stat. § 173.17(1) (1988) (emphasis added). No Minnesota cases address the specific rights for which section 173.17 requires such compensation.

█ The trial court found that compensation for *all* rights includes the right to rent the structure for advertising purposes. The trial court based this finding on the testimony of both parties' witnesses who conceded that the sign owner possessed the right to rent the structures. While Chapter 117 might not require the state to compensate for the rights taken in this instance, Chapter 173 creates a separate obligation. The trial court's conclusion that Minn.Stat. § 173.17 permits compensation for lost rental income was not clearly erroneous.

Appellant further suggests that the trial court's conclusion that Chapter 173 "overrides the common law" is an unconstitutional interpretation of Chapter 173. In its conclusions, the trial court stated:

[T]he legislative mandate of just compensation set forth in Minn.Stat. § 173.17 supersedes and overrides the common law of eminent domain as it relates to compensation due an owner of property in an eminent domain proceeding.

The legislature has the power to designate over what property the state may exercise eminent domain, which it has done in Chapter 173. It is for the judiciary to ascertain the measure of just compensation. *See Monongahela Navigation Co. v. United States,* 148 U.S. 312, 327, 13 S.Ct. 622, 626, 37 L.Ed. 463 (1893). Chapter 173 must be, and can be, interpreted consistently with the common law of eminent domain. *See Dairyland Power Cooperative v. Brennan,* 248 Minn. 556, 565, 82 N.W.2d 56, 63 (1957) (courts should assume legislature intended that eminent domain be exercised within the framework of constitution). Consequently, the trial court went too far in suggesting that Chapter 173 supersedes and overrides the common law of eminent domain.

█ Nevertheless, there is no indication that the trial court actually employed an unconstitutional interpretation. The trial court's conclusion that rental income is compensable is consistent with the common law of eminent domain. Under Chapter 117, while evidence of profits derived from a business conducted on property is not admissible, rental income from the property is competent evidence in determining market value. *Regents of University of Minnesota v. Irwin,* 239 Minn. 42, 47, 57

N.W.2d 625, 627–28 (1953). *See also Housing & Redevelopment Authority v. First Avenue Realty Co.,* 270 Minn. 297, 300, 133 N.W.2d 645, 648 (1965) (rental income derived from property deemed relevant in estimating market value). Therefore, while the trial court's language may overreach, its actual interpretation is not reversible error.

Appellant also contends that in order for rent to be compensable, it must derive from real property. Citing *Kouri* and *Minneapolis Community Development Agency,* appellant claims that billboards are personal property and maintains that the trial court's determination that it was unnecessary to classify the billboards as real or personal property was erroneous. *See Minneapolis Community Development Agency,* 417 N.W.2d at 131; *Kouri,* 415 N.W.2d at 413.

Minn.Stat. § 173.05 (1988) (emphasis added) states:

> The commissioner of transportation shall acquire all rights in property, *personal or real,* necessary to carry out the purposes of sections 173.01 to 173.11, by purchase, gift, or eminent domain proceedings.

Whether or not personal property is compensable under Chapter 117 is irrelevant in this case since Chapter 173 clearly permits compensation for personal property interests. The trial court's determination was proper.

## II. Characterization of Billboard Income

Appellant contends that income from billboards is profit rather than rental income because billboards are not income-generating property. No Minnesota case has addressed the issue of whether income from billboards constitutes rent or profits. There is support in other jurisdictions for both positions.

Generally, to use the income approach for appraising billboards, the court must consider two criteria. First, the property itself must be income producing, rather than merely the locus of a business generating such income. Second, the billboards cannot be relocated. *City of Scottsdale v.*

*Eller Outdoor Advertising Co.,* 119 Ariz. 86, 93–94, 579 P.2d 590, 597–98 (Ariz.Ct.App.1978); *see also State v. Obie Outdoor Advertising, Inc.,* 9 Wash.App. 943, 948–49, 516 P.2d 233, 237 (Wash.Ct.App.1973) (relocation not possible in same market area); *In re Urban Redevelopment Authority of Pittsburgh,* 440 Pa. 321, 326, 272 A.2d 163, 165 (1970) (relocation possible). *But see Division of Administration v. Allen,* 447 So.2d 1383, 1388 (Fla.Ct.App.1984) (rental income from billboards not compensable since it was not "generated from the land itself, but was from the business operated on the land").

■ The trial court in this case heard testimony from numerous witnesses classifying respondent's income as rental of advertising space. Appellant's appraiser categorized the income as business income but acknowledged that if the billboards could not be relocated, an award of business income might be appropriate. Testimony that the billboards cannot be relocated in Dakota County was unrefuted. The loss of rental value claimed by respondent is fixed, not speculative. *See Irwin,* 239 Minn. at 47, 57 N.W.2d at 628 (rental receipts, unlike profits, are not subject to uncertainties of nature of season, condition of market, price of labor, etc.). The evidence supports the trial court's determination that the rental income is generated by the billboards and thus is compensable.

Appellant argues that the trial court should have followed the analysis in *City of Minneapolis v. Schutt,* 256 N.W.2d 260 (Minn.1977), wherein the Minnesota Supreme Court held that a party can claim compensation for loss of going concern only if 1) the going concern will be destroyed as a result of condemnation and 2) the business cannot be relocated. *Id.* at 265. Respondent has not, however, made a claim for loss of the going-concern value to its business as did the appellant in *Schutt.* Rather, respondent here asks only for the use of rental income in valuing the billboards being taken.

Appellant maintains that even if the billboards were income producing, the income is not compensable since it is generated

from the ability of billboards to be seen by a continuous flow of traffic. This argument is without merit. We recognize that a business owner is not entitled to compensation for loss of customers, business, income, or profits when traffic is diverted from a place of business. *Hendrickson v. State,* 267 Minn. 436, 446–47, 127 N.W.2d 165, 173 (1964). Nevertheless, respondent here is not claiming loss of profit due to relocation of a highway; rather respondent is complaining of a total loss of location.

### III. Billboard Valuation

Finally, appellant contends that the trial court should have used the cost approach to measure respondent's damages. Minnesota courts recognize the validity of the cost, income, and market approaches to valuation. *See Ramsey County v. Miller,* 316 N.W.2d 917, 919 (Minn.1982). Likewise, courts in other jurisdictions have used varying approaches for valuing billboards. *See, e.g., Scottsdale,* 119 Ariz. at 86, 579 P.2d at 590 (income multiplier approach); *Allen,* 447 So.2d at 1383 (cost approach).

■ In 1973, the federal right-of-way office decided against use of the multiplier approach. It recommended the cost approach, but did not preclude further development of the gross rent multiplier. Here, the trial court concluded that the most logical and fair method of providing just compensation for billboards was the gross rent multiplier. The cost approach would only compensate for the structures themselves and not consider "the problems associated with replacing the billboards within the same market area." In light of the trial court's determination that Minn.Stat. § 173.17 requires compensation for lost rental income, the trial court's use of the gross rent multiplier in valuing the advertising structures was not clearly erroneous.

### DECISION

The trial court's determination that Minn.Stat. § 173.17 permits compensation for lost rental income was not clearly erroneous.

Affirmed.