OPINION
By the Court,
Agosti, J.:
The issue in this condemnation case is how to value a billboard leasehold interest when the underlying property has been condemned and the billboards cannot be relocated to a comparable site. We conclude that, under such circumstances, the advertising rental income generated from such billboards should be considered in determining the fair market value of the billboard leasehold interest.

FACTS

In August 1993, respondent Nevada Department of Transportation (“NDOT”) commenced a condemnation action to acquire a portion of the Damonte Ranch in south Reno in order to extend the U.S. 395 freeway and to construct an interchange. Prior to the condemnation, appellants National Advertising Company (“National”) and Donrey of Nevada, Inc. (“Donrey”) (collectively referred to as the “Advertising Companies”) maintained billboards on the property to be condemned.
National entered into three written lease agreements with the landowners of Damonte Ranch (“Damontes”), which allowed National to erect and maintain four illuminated billboard structures, one of which was double-faced, on the land adjacent to U.S. 395. These leases commenced at various times from late 1992 to mid-1993 and continued for initial terms of ten years. The leases granted National the option to renew for a second term of ten years, and thereafter, the leases would automatically extend *109 from year to year until terminated by either party. National had maintained most of these billboards on the property in excess of twenty years under a prior lease agreement. National’s billboards generated an annual rental income of $58,836.00.
Donrey also entered into a written lease agreement with the Damontes, which allowed Donrey to install and maintain two billboards on the land adjacent to U.S. 395. The lease commenced in October 1992 and contained terms similar to those in National’s leases. Donrey’s illuminated, double-faced billboard generated an annual rental income of $24,780.00.
The Advertising Companies had the right to maintain their billboards in place and receive the rental income from advertisers for a minimum of twelve to fifteen years. The Advertising Companies’ leasehold sites were excellent locations for billboards, visible to all traffic moving into Reno and, in September 1993, exposed to approximately 45,000 vehicles per day. All of the billboards were continually leased, and National had a waiting list of advertisers for its billboards.
Pursuant to an order of occupancy, NDOT demanded that the Advertising Companies remove their billboards to make way for construction. Both companies complied, salvaging what parts they could and scrapping the rest. Because the billboard posts were installed in cement underground, removal required sawing the poles off with a chain saw. The billboards were then disassembled with a blow torch. The salvage value for the billboards ranged from a few hundred to one thousand dollars.
Since Washoe County Ordinance 105 restricts the replacement of existing billboards, die Advertising Companies were unable to obtain permits to relocate their signs on the Damonte property or at any other location along U.S. 395. The Advertising Companies were also unable to erect new signs in Washoe County to replace the advertising rental income lost as a result of NDOT’s condemnation action.[1] Thus, the condemnation of the Damonte property forced the Advertising Companies to cancel their contracts with advertisers.
The Advertising Companies sought compensation for the value of their leasehold interests, including the value of the billboard structures and the income generated from the billboards at the Damonte location.[2]
*110 NDOT filed a motion for partial summary judgment, requesting that the district court find that the billboards were personal property as a matter of law; therefore, the income generated from renting those billboards was business income that should not be considered in determining just compensation for the leasehold interests. In the alternative, NDOT requested that the district court exclude any evidence of the advertising rental income since NDOT was not condemning the billboard structures. The district court denied NDOT’s motion. While the court found that the signs were removable trade fixtures and thus the personal property of the Advertising Companies, the court nonetheless concluded that the advertising income generated by the billboards was rent that should be considered in valuing the leasehold interests. In so doing, the court noted that “[t]he interests of the [Advertising Companies] sought to be extinguished under the State’s power of eminent domain were leasehold interests [which] . . . possess value for the purposes of this proceeding.” Thus, the court rejected NDOT’s argument that because the billboards are removable trade fixtures, the Advertising Companies’ compensation should be limited to relocation costs.
The Advertising Companies next moved for partial summary judgment, requesting that the district court determine that advertising rental revenues generated by the Advertising Companies’ leasehold interests are properly and legally included in the determination of just compensation, notwithstanding the district court’s prior ruling that the billboards were removable trade fixtures. The district court granted this motion. In granting the motion, the court ruled that the Advertising Companies were entitled to recover the economic benefit they derived from their leaseholds and that “such economic benefit can only be determined by virtue of the income that those signs generate and that said income should and must be taken into consideration to determine just compensation.’ ’
The parties waived their right to a jury trial, and the case proceeded to a two-day bench trial. The sole issue at trial was the amount of compensation owed to the Advertising Companies for the taking of their property interests.
National’s expert, real estate appraiser Dwight Pattison, used two methods to value National’s leasehold interests: (1) a comparable sales approach using a gross income multiplier and (2) an income capitalization approach to value. Under the first approach, Pattison analyzed eight different sales transactions of comparable billboard interests. Pattison testified that the most relevant transaction was Leonard Outdoor Advertising Company’s (“Leonard”) purchase of twenty leasehold locations within a few miles of National’s billboards. Pattison testified that the leases held by the *111 seller in that transaction were inferior to National’s leases in that many had shorter remaining terms at the time of Leonard’s purchase. The sales contracts revealed that Leonard paid approximately four times the annual gross income generated by each sign location to acquire permits to erect the billboards, the billboard structures, the leaseholds, and the right to receive rental income from advertisers. Thus, Pattison concluded that a gross income multiplier of four was appropriate to measure the fair market value of National’s leasehold interests, i.e., a buyer would pay four times the annual gross rental income to purchase National’s leasehold interests. Thus, under the first comparable sales approach, he concluded that the fair market value of National’s leasehold interests was $232,588.00, which is four times its annual gross income generated from the relevant billboards.
The second method, the income capitalization approach to value, is based upon the capitalization of the net income produced by property using a rate of return that a prudent investor would expect upon his investment. Under this approach, Pattison looked at the actual rent paid by advertisers for National’s billboards and verified that those rents were equivalent to market rent based upon rents paid for other comparable billboard locations. He then determined the projected rental income and deducted standard expenses associated with the operation and maintenance of such billboards. Finally, he determined the value of the billboard locations by taking the net income and capitalizing it at a rate of return of fifteen percent, and concluded that the fair market value of National’s property interests was $217,581.00. Based on his conclusions under both valuation approaches, Pattison determined that the fair market value of National’s leasehold interests was $230,000.00.
Donrey’s expert, Verne Cox, used the same two methods used by Pattison to value Donrey’s leasehold interests and determined that the fair market value of Donrey’s leasehold interests was $99,000.00, which is four times its annual gross income generated from the relevant billboards.
NDOT’s appraiser, Steven Johnson, used the bonus value method of appraising the Advertising Companies’ property interests. The bonus value method focuses only on the value of the ground leases. Specifically, this method calculates the difference between the fair market rent the Advertising Companies would pay to lease comparable ground and the contract rent owed to the Damontes, projected over the remaining time the billboards could be expected to remain on the property. In his analysis, Johnson assumed that National and Donrey’s billboards would have stayed in place for the remainder of their lease terms, fifteen and twelve years respectively. Johnson considered the advertising rental *112 income generated by the subject billboards, but only for the purpose of determining whether the ground rent actually paid by the Advertising Companies was a market rate, since ground rent is typically based on a percentage of advertising rental income generated by a particular billboard. Johnson did not consider advertising rental income in determining the value of the subject leasehold interests because it was not part of his assignment by NDOT. However, Johnson acknowledged that, on a prior occasion, he did use an income methodology and considered the income derived from billboard advertising to appraise a billboard leasehold interest.
The district court ultimately entered its findings of fact, conclusions of law and order, wherein it adopted the bonus value methodology advocated by NDOT. The district court repeated its prior ruling that income “generated from selling space on the outdoor signs is relevant to determine ‘just compensation’ and must be considered to do substantial justice.” However, the district court concluded that the advertising rental income was ‘ ‘business income” and, thus, not compensable in this condemnation action. Instead, the court concluded that the proper measure of value of the leasehold interests was the bonus value method. The court awarded the bonus values arrived at by NDOT’s appraiser, specifically, $36,800.00 to National and $14,300.00 to Donrey.
On appeal, the Advertising Companies argue that the district court failed to justly compensate them for the most valuable right they lost as a result of the condemnation, the right to generate substantial rental income due to the unique and valuable location of their billboards, by erroneously characterizing that income as “business income.”[3] The Advertising Companies contend that while the bonus value method is not invalid per se, the formula cannot justly compensate them in this case because it does not consider the lost advertising rental income which the Advertising Companies cannot replace since the billboards cannot be relocated to a comparable site within the market area.

DISCUSSION

Three recognized valuation methods in condemnation cases exist. These are the income capitalization approach, the market approach and the cost approach.[4] Jurisdictions are divided as to *113 which method appropriately values a billboard leasehold interest. Some courts focus on whether a billboard is characterized as personalty or realty, as does NDOT, in determining whether advertising income should be considered in assessing the value of leasehold interests, or in determining whether a billboard owner is entitled to compensation at all. Those courts conclude that if a billboard is characterized as a trade fixture or personalty, then either it is improper to consider the advertising income it generates, or the owner is not entitled to compensation at all.[5]
Other courts conclude that the characterization of a billboard as either realty or personalty is an arbitrary distinction, and that advertising income generated from billboards that cannot be relocated should be considered in valuing leasehold interests so that owners will be justly compensated.[6]
We conclude that this latter approach is the better means of awarding just compensation for condemned leasehold interests when billboards cannot be relocated to comparable, income-generating sites. This approach is espoused in 8A Nichols on Eminent Domain § 23.03[5][a], at 37-42 (3d ed. 1997, 1998), which recognizes the importance of location in the ability of a *114 billboard to generate advertising income and the difficulty in relocating billboards under restrictive regulations. Under the circumstances of this case, we believe that either the comparable sales method or the income capitalization method would be a better means than the bonus value method of appraising the market value of the Advertising Companies’ lost interest. See Eller Outdoor Advertising, 579 P.2d at 598.
In this case, location was critical in the Advertising Companies’ ability to generate advertising income. The record shows that the Advertising Companies were unable to relocate their billboards to a comparable site within Washoe County that would replace advertising income lost as a result of NDOT’s condemnation action. The income generated from the billboards should have been considered in determining the value of the Advertising Companies’ leasehold interests.[7] The bonus value approach does not sufficiently compensate the Advertising Companies for their leasehold interests. As noted by the district court, the bonus value approach is based on the assumption that the Advertising Companies may keep the benefit of their bargain with the Damontes if they can relocate their billboards under a comparable lease at market value to another comparable site. The evidence in this case, however, clearly establishes that these billboards were in valuable, unique locations, and that the billboards could not be relocated to a comparable site within the market area.
For the foregoing reasons, we conclude that the district court erred when it awarded the bonus value of the Advertising Companies’ ground leases and did not consider the advertising income generated by these billboards in calculating the value of their leasehold interests.[8] We conclude that under the circumstances of this case the income methodology should be used in *115 order to fairly compensate the Advertising Companies. We, therefore, reverse the district court’s order and remand with instructions to the district court to determine, consistent with this opinion, the amount of compensation to be paid to the Advertising Companies.
Rose, C. J., and Leavitt, J., concur.

Since 1985, National has erected nine new billboards on an Indian Reservation in Wadsworth and one ten miles south of Gardnerville on U.S. 395, while Donrey has constructed fifteen smaller poster face signs in the Reno-Sparks area.

Pursuant to a settlement, NDOT compensated the Damontes for the increased value of their land due to the income resulting from the leases to the Advertising Companies.

"Business income” is anticipated future profits.

The cost approach is the depreciated replacement or reconstruction cost of a billboard, together with the bonus value of the owner’s ground lease. Thus, the bonus value advocated by NDOT and adopted by the district court is only a part of the cost approach. See 8A Nichols on Eminent Domain § 23.04[4][a], at 52 (3rd ed. 1997, 1998). This method, however, is only valid “when it is established that substitute, permitable sites exist in the immediate market.” Id.

See Nat’l Adver. v. North Carolina Dep’t of Transp., 478 S.E.2d 248, 249-50 (N.C. Ct. App. 1996) (concluding that a billboard owner did not have a compensable property interest in its billboard structure, which was removable personal property as a matter of law); Creative Displays v. South Carolina Highway, 248 S.E.2d 916, 917-18 (S.C. 1978) (concluding that a billboard was personal property and thus not compensable); State v. Teasley, 913 S.W.2d 175, 178 (Term. Ct. App. 1995) (concluding that a billboard was a trade fixture not compensable in eminent domain, but the billboard owner was entitled to cost of removal and bonus value of the lease under Tennessee statutory law).

See City of Scottsdale v. Eller Outdoor Adver. Co. of Arizona, 579 P.2d 590, 596-98 (Ariz. Ct. App. 1978) (concluding that the income approach is the best method of valuation only when a billboard cannot be relocated in a given market area because billboard locations are unique and it is virtually impossible to separate location from the structure, even though the billboard is deemed personal property under the lease); Nat’l Adver. Co. v. Florida Dept. of Transp., 611 So. 2d 566, 569-70 (Fla. Ct. App. 1993) (concluding that billboard replacement cost was insufficient compensation where a billboard’s location was unique and it could not be relocated; the condemnor should have presented evidence of income in valuing the leasehold interest); City of Norton Shores v. Whiteco Metrocom, 517 N.W.2d 872, 873 (Mich. Ct. App. 1994) (concluding that condemned leaseholds were income-producing property for which income capitalization method was a valid means of estimating market value, regardless of whether the billboards were trade fixtures or personal property); State of Minnesota v. Weber-Connelly, Naegele, Inc., 448 N.W.2d 380, 383, 384-85 (Minn. Ct. App. 1989) (concluding that a state statute permits compensation for lost rental income, and that the income approach for appraising billboards is proper because the property was income producing and the billboards could not be relocated).

The Advertising Companies are not entitled, nor do they seek, to recover lost intangible business income. In order to determine the value of the leasehold interests, however, the advertising rental income must be considered under the income capitalization approach, which adjusts the anticipated net income to present value through the capitalization process. 8A Nichols on Eminent Domain § 23.04[4][b] at 54 (3d ed. 1997, 1998).

Because we conclude that the subject billboards cannot be relocated, we need not reach the issue of whether the district court erred in finding that the billboards were removable trade fixtures as a matter of law. As demonstrated above, we believe the threshold issue is whether the billboards can be relocated to a comparable site within the market area such that the Advertising Companies can replace their lost advertising rental income. If the billboards cannot be relocated to a comparable site, as is the case here, then the state must compensate the billboard owners for the valuable interests taken, that is, the value of their leasehold interests, taking into account the irreplaceable, lost rental income.